354 A.2d 120.

Ruth Coolbeth *et al. vs.* Aram K. Berberian *et al.*

MARCH 25, 1976.

Present: Paolino, Acting C. J., Joslin and Kelleher, JJ.

KELLEHER, J. The defendant, Aram K. Berberian, is an attorney. He is before this court on appeal from a Superior Court order adjudging him in criminal contempt and sentencing him to prison.

On July 9, 1971, Ruth Coolbeth filed a complaint in the Superior Court on behalf of herself and all other tenants in Rhode Island to enjoin Berberian and others from participating in self-help evictions in violation of

P. L. 1970, ch. 7.[1] On July 29, 1971, a preliminary injunction enjoined Berberian and others from "conducting, supervising or participating" in any eviction inconsistent with the new statutory scheme. Only Berberian appealed, and no stay of the preliminary injunction was issued pending the outcome. On May 1, 1973, Coolbeth filed a contempt motion, alleging that on April 20, 1973, Berberian participated in an attempted self-help eviction of Barbara Tamborelli. After a hearing in the Superior Court, an order was issued on June 27, 1973, adjudging Berberian in criminal contempt of the preliminary injunction of July 29, 1971, and sentencing him to the Adult Correctional Institutions for 120 days.[2] Berberian was released

---

[1] Public Laws 1970, ch. 7:

(1) added G. L. 1956 (1969 Reenactment) §34-18-17, which reads as follows:

"The right of a landlord or a reversioner to utilize 'self help,' so called, whether pursuant to the common law or pursuant to any agreement in writing or by parol, to re-enter and repossess himself of land, buildings or parts of buildings leased upon non-payment of rent is prohibited";

(2) repealed §34-18-8, the right of a landlord under certain circumstances to reenter and repossess premises upon nonpayment of rent;

(3) amended §34-18-9 so that a landlord, in order to recover possession after nonpayment of rent, shall institute a trespass and ejectment action, and further provided that executions are to be issued only to a sheriff.

[2] The order of June 27, 1973, reads:

"This matter came on for hearing before the Court on a motion to adjudge the defendant, Aram K. Berberian, in criminal contempt and the Court having determined beyond a reasonable doubt that said defendant wilfully disobeyed an order of this Court in the form of a Preliminary Injunction issued on July 29, 1971 by his conduct in April, 1973, hereby orders that the punishment for said criminal contempt shall, is and will be incarceration for one hundred and twenty (120) days at the Adult Correctional Institutions to be served consecutively to any sentences heretofore imposed on the defendant.

"Pending appeal of this determination and order, the defendant may be released on One Thousand ($1,000) Dollars bail with surety, or One Hundred ($100) Dollars in cash."

on bail pending appeal. While this appeal from the contempt order was pending, we denied and dismissed Berberian's appeal from the preliminary injunction. *Coolbeth* v. *Berberian*, 112 R. I. 558, 313 A.2d 656 (1974).

Since we have already ruled on Berberian's appeal from the preliminary injunction, *Coolbeth* v. *Berberian, supra,* we shall invoke the doctrine of collateral estoppel and not consider various other contentions which Berberian now seeks to raise regarding the validity of that order. *Providence Teachers Union, Local 958* v. *McGovern,* 113 R. I. 169, 172, 319 A.2d 358, 361 (1974).

As to the contempt proceedings, Berberian first claims that the trial justice erred in denying his motion to dismiss the motion for contempt on the ground of mootness. Berberian argues that by settling the dispute with her landlords and then changing residences before bringing the motion for contempt, Coolbeth lost her interest in the litigation and was unqualified to represent the class. But the record discloses that on April 9, 1974, Coolbeth stated by sworn affidavit that she was a tenant in Rhode Island, and there is no evidence that she has not been a tenant in Rhode Island at any time since this matter began. Hence Coolbeth has been a member of the class protected by the preliminary injunction throughout the contempt proceedings. We need inquire no further in upholding the denial of Berberian's motion to dismiss.

Berberian next claims that the trial justice committed error in adjudging him in contempt, because his self-help eviction of Tamborelli was not within the class of evictions enjoined by the preliminary injunction. Berberian contends that the preliminary injunction goes no further than G. L. 1956 (1969 Reenactment) §34-18-9, and that this section prohibits self-help eviction only of tenants in arrears in payment of rent. Asserting that Tamborelli was in fact a trespasser, Berberian argues she was not a mem-

ber of the class protected by the preliminary injunction. He thus concludes that the self-help eviction of Tamborelli did not violate the preliminary injunction. However, the statutory scheme appears sufficiently comprehensive on its face to prohibit *all* self-help evictions. *Coolbeth* v. *Berberian, supra* at 566, 313 A.2d at 660. The preliminary injunction bars the self-help eviction of "any person claiming possession as a tenant." When this phrase is read in conjunction with the language of the legislation, we are convinced that Tamborelli was a member of the class protected by the preliminary injunction. It follows that the alleged self-help eviction of Tamborelli by Berberian violated the preliminary injunction.

This conclusion is dispositive of another related issue. Berberian claims that during the contempt hearing the trial justice improperly precluded inquiry into Tamborelli's nonpayment of rent and the landlord's identity at the time of the self-help eviction. However, since Tamborelli was protected by the preliminary injunction, these inquiries could not have yielded any relevant testimony. The trial justice committed no error in sustaining Coolbeth's objections to those lines of questioning.

Having determined that Coolbeth's motion for contempt was properly before the Superior Court, we now reach the most significant portion of this appeal. Berberian frames the issue as whether a petition for adjudication in contempt, not denominated criminal and not brought in the name of the state by the Attorney General, may result in an adjudication of criminal contempt.

There is no doubt that the trial justice adjudged Berberian in criminal contempt. In addition to the plain language of the order, note 2 *supra*, the sanction of 120 days' imprisonment was appropriate only for criminal contempt because of its punitive, irredeemable, and unconditional quality. *School Committee* v. *Pawtucket Teachers*

*Alliance, Local 930,* 101 R. I. 243, 253-56, 221 A.2d 806, 813-14 (1966); *Nelson* v. *Progressive Realty Corp.,* 81 R. I. 445, 450, 104 A.2d 241, 243 (1954). The question now is whether the court adhered to proper criminal contempt procedures. These procedures are found in Super. R. Crim. P. 42, which in pertinent part reads as follows:

"(b) Disposition Upon Notice and Hearing. A criminal contempt [not committed in the actual presence of the court] * * * shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and *describe it as such.* The notice shall be given orally by the justice in open court in the presence of the defendant or, on application of an attorney for the State or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest." (Emphasis added.)

The record is devoid of any indication that Berberian received proper notice that the proceeding contemplated criminal contempt.

The motion for contempt brought by Coolbeth alleged Berberian's "wilful disregard" of the preliminary injunction. Standing alone, the word "wilful" has no precise meaning but generally indicates intentional or deliberate conduct. We find no basis for holding that the phrase "wilful disregard" necessarily implies contempt of a criminal rather than civil nature. The motion also prayed that Berberian be "* * * fined and/or incarcerated in such measure as the Court shall deem fit." Since it is well settled that cumulative fines and conditional imprisonment may be appropriate coercive sanctions for civil contempt, the prayer could not tell Berberian the nature of the contempt. Nowhere does the motion or the order to show cause issued the same day describe his alleged contemptuous behavior as civil or criminal.

The headings of all Superior Court papers in the record, for instance the subpoenas issued for the show cause hearing, retain the same docket number as the original complaint, Civil Action No. 71-1918.

The transcript provided us shows that no one addressed the question of whether the contempt was civil or criminal during the first day of the hearing on May 31, 1973. On that day, as on later hearing days, a witness was allowed to claim the privilege against self-incrimination. The fifth amendment of the Constitution of the United States declares in part: "No person * * * shall be compelled in any *criminal* case to be a witness against himself * * *." (Emphasis added.) However, the privilege has been judicially extended to virtually all proceedings, criminal or civil. *Maness* v. *Meyers*, 419 U. S. 449, 463-64, 95 S.Ct. 584, 593-94, 42 L.Ed.2d 574, 586-87 (1975), and cases cited therein. To this general extension of the privilege we find no exception in law or logic for criminal contempt proceedings. Thus the witness's claim provided Berberian no clue to the kind of contempt contemplated.

The first indication that this proceeding may have involved criminal contempt was the appointment by the court of an assistant Attorney General as a friend of the court at the beginning of the second hearing day, June 1, 1973.[3] The appointment was made in the event that it became necessary to grant immunity to any witness pursuant to the provisions of §12-17-15. Given the language of this section, which refers exclusively to criminal pro-

---

[3]"Mr. Ryan: I've been directed by the Attorney General to enter my appearance amicus curiae, if the court will allow me to, with a situation developing here that there may be some immunization of witnesses under the statute. As I say, I've been directed to enter my appearance for that purpose to find out whether or not that would be necessary in this case so far as the Attorney General and State of Rhode Island is concerned.

The Court: I'll allow you to enter your appearance amicus. I'm not quite sure what that means in this case, but you may enter your appear-

ceedings, arguably this appointment put Berberian on notice that criminal contempt was contemplated. However, §12-17-15 was not specifically adverted to until its provisions were actually incorporated in an order dated June 27, 1973, the same day that the contempt order was issued. Consequently, we find that the appointment was not sufficient to comply with the notice provisions of Super. R. Crim. P. 42(b).

According to the record before us, no direct reference was made to the nature of the contempt until the seventh and last hearing day, June 27, 1973. On that day Berberian in his closing argument said that the first inkling he had had that this was a criminal matter was the previous day, when an attempt to employ the witness immunity statute was being considered. There is nothing before us to cast doubt on the truth of Berberian's statement, nor is there any indication that his misapprehension was unreasonable or baseless.

We are convinced from the record that the contempt hearings were conducted without adherence to the notice provisions of Super. R. Crim. P. 42(b). We are aware that in considering Fed. R. Crim. P. 42(b), the federal counterpart of our Rule 42(b), the Supreme Court ruled that there was no necessity for expressly charging an individual with criminal contempt if he is not substantially prejudiced by such an omission. *United States* v. *United Mine Workers of America,* 330 U. S. 258, 296-98, 67 S.Ct. 677, 697-98, 91 L.Ed. 884, 914-15 (1947). See 8A Moore, *Federal Practice* ¶42.04[3] at 42-30.4 — 30.5 (2d ed. 1975); 3 Wright, *Federal Practice & Procedure: Criminal*

---

ance amicus at the moment.
   Mr. Berberian: May I note my objection please.
   The Court: Your objection is noted.
   Mr. Berberian: May I also inquire amicus for whom?
   Mr. Ryan: For the court.
   The Court: Appointed by the court as a friend of the court."

§704 at 156-58 (1969). Prejudice in such a case may involve the misconception that the standard of proof is something less than beyond a reasonable doubt, inadvertence to the possible right to a jury trial, and mistaken belief that the sanction could be only remedial, not punitive. It is our belief that such prejudice would inhere in almost every case where the notice required by Rule 42(b) was not given. Furthermore, we are concerned that our interpretation of Rule 42(b) may undermine its goal of avoiding the confusion that arises as one seeks to determine whether a contempt proceeding is civil or criminal. Moore; Wright, both *supra*. By insisting that a Rule 42(b) notice specifically inform the accused that he is being charged with criminal contempt, the accused, the trial court, and all concerned will know where they stand, and the bewilderment in the present case can be avoided. *See Clark v. Boynton,* 362 F.2d 992 (5th Cir. 1966). In short, to best avoid both prejudice and confusion, we affirm that Rule 42(b) means what it says when it specifies that the facts which constitute the alleged "criminal contempt" be included in the notice and that the notice must "describe it as such." Accordingly, we hold that all notices issued hereafter pursuant to Rule 42(b) should expressly notify the accused that he is indeed being charged with criminal contempt.

Where criminal contempt sanctions are imposed but the procedure was clearly inadequate for criminal contempt, the proper remedy on appeal is to vacate the criminal contempt conviction and remand to the trial court. *Penfield Co. v. Securities & Exchange Comm'n,* 330 U. S. 585, 595, 67 S.Ct. 918, 923, 91 L.Ed. 1117, 1125 (1947); *Gompers v. Bucks Stove & Range Co.,* 221 U. S. 418, 452, 31 S.Ct. 492, 502, 55 L.Ed. 797, 810 (1911); *Carbon Fuel Co. v. United Mine Workers of America,* 517 F.2d 1348, 1350 (4th Cir. 1975). On remand the Superior Court has

three options. First, it may take no action at all. Second, it may impose appropriate civil contempt sanctions. *See Nelson* v. *Progressive Realty Corp., supra.* And third, it may start contempt proceedings over again, this time complying with the provisions of Super. R. Crim. P. 42(b). As to this last option, however, we note that in this appeal we do not reach the question of whether, assuming that imposition of punitive sanctions had been preceded by compliance with the provisions of Super. R. Crim. P. 42(b), the underlying conduct alleged here could have been properly denominated "criminal contempt."

In view of our holding, we need not reach Berberian's claims that the trial justice had improperly classified a witness as "adverse," that the evidence did not support the judgment beyond a reasonable doubt, that the trial justice should have recused for prejudice, that free transscripts should have been supplied, that the hearing should have been continued, and that a new trial should be granted.

The judgment of criminal contempt is vacated, and the cause is remanded to the Superior Court for further proceedings consistent herewith.

Mr. Chief Justice Roberts and Mr. Justice Doris did not participate.

*John M. Roney, Barry Kusinitz, Alden C. Harrington, Rhode Island Legal Services, Inc.,* for plaintiffs.

*Berberian & Tanenbaum, Aram K. Berberian,* pro se, for defendant.