**353 A.2d 607.**

CITY OF PAWTUCKET *vs.* COUNCIL #70, AFSCME,
AFL-CIO, LOCAL 1012 *et al.*

MARCH 26, 1976.

PRESENT: Paolino, Acting C. J., Joslin, Kelleher and Doris, JJ.

PAOLINO, J. This is an appeal from an order of the Superior Court arising out of a labor dispute during the summer of 1975 between a municipal employees' labor organization and the city of Pawtucket. The order imposes fines and suspended jail sentences on six named union officials for violating a preliminary injunction against striking, and it denies the motion of the union counsel to reconsider the prison sentence already imposed on him for violating the preliminary injunction.

On July 1, 1975, the city of Pawtucket (the city) filed a complaint in the Superior Court against the Rhode Island Public Employees Council #70 of the American Federation of State, County, and Municipal Employees of the AFL-CIO (the union); against its officers, President James Matley, Vice President Roger Viens, Treasurer Frank Macuga, and Secretary Joanne Waters (the officers); and against the municipal employees of the city of Pawtucket, individually and collectively (the employees). The city alleged that since expiration of the union's contract the previous day, June 30, the union had been engaging in a strike or work stoppage in violation of G. L. 1956 (1968 Reenactment) §§28-9.4-1, 28-9.4-16. The city prayed that the union, the officers, and the employees be temporarily and permanently enjoined from striking or engaging in any work stoppage or slowdown strike. Later on July 1, the trial justice entered a restraining order as prayed for. The hearing on a preliminary injunction was held on July 10, 1975, with Giovanni Folcarelli representing the union, the officers, and the employees. The next

day, July 11, the trial justice entered an order granting a preliminary injunction as prayed for.

On September 4, 1975, the city filed a motion in Superior Court to adjudge the union, the officers, and the employees in contempt of the July 11 preliminary injunction in that they were presently engaging in a strike. Later that day the trial justice entered an order that citations be issued against the four officers, Mr. Folcarelli, "John Doe, union member who made the motion to go on strike," "John Doe, union member who seconded the motion to go on strike," and two additional union officers: Ralph Labriole, Staff Representative, Council #70; and Oscar Labonte, Chief Steward, Local 1012. The citations were returnable the next day, September 5.

The officers, now numbering six, did not appear in Superior Court the next day, September 5, at the hearing on the city's motion to adjudge in contempt. A sheriff testified that he had been unable to serve the contempt citations personally on any of the officers. Mr. Folcarelli had been served and was present, representing himself and the union but not the missing officers. Dennis M. Lynch, the Mayor of Pawtucket, testified that the union had returned to work in early July but had gone out on strike again on September 3 when contract negotiations broke down. In a colloquy with the trial justice, Mr. Folcarelli volunteered that he had advised union members to resume the strike despite the July 11 preliminary injunction and that he would take full responsibility for the whole matter. The trial justice then decided that the union, the officers, the employees, and Mr. Folcarelli were all in contempt of the preliminary injunction he had issued on July 11. He fined the union $10,000 a day for each day it remained on strike commencing September 3; he issued body attachments for the officers; and he sentenced Mr. Folcarelli to the Adult Correctional Institutions for 60 days commencing forth-

with. No order embodying this decision was entered until September 9, 1975.

Meanwhile, on September 7, 1975, a contract was successfully negotiated, the strike was settled, and the workers returned to their jobs.

On September 10, 1975, the trial justice held another hearing on this matter in the Superior Court. The officers presented themselves voluntarily, admitted violation of the July 11 preliminary injunction and civil contempt arising from that violation, and waived a hearing on the contempt matter. Mr. Folcarelli asked the court to reconsider his 60-day sentence. Defense counsel argued certain factors in mitigation on behalf of the officers and Mr. Folcarelli. No mention was made of the fine imposed on the union. The trial justice decided to deny Mr. Folcarelli's motion, to sentence each of the officers to the Adult Correctional Institutions for 30 days but to suspend the sentences, and to fine each of the officers $100. No order was entered embodying this decision until November 4, 1975.

The first notice of appeal to this court in this matter was filed on September 5, 1975, after that day's hearing. "Council 70, AFSCME, AFL-CIO, Giovanni Folcarelli, et al" claimed to be appealing from an order entered that day. However, since no order was entered on September 5, we held on September 9, 1975, that the appeal was not properly before us. *City of Pawtucket* v. *Council #70, AFSCME, AFL-CIO, Local 1012*, 115 R. I. 914, 344 A.2d 374 (1975). After the order was entered later on September 9, 1975, no notice of appeal from it to this court was filed. Thus, no appeal from the order of September 9, 1975, is properly before us.

The second notice of appeal to this court in this matter was filed on September 10, 1975, after that day's hearing. "Council #70, AFSCME, AFL-CIO, Giovanni Folcarelli"

202

claimed to be appealing from an order entered that day. However, since no order was entered on September 10, this appeal, like its predecessor, was not properly before us. An order embodying the September 10 decision was entered in the Superior Court on November 4, 1975.

The third and last notice of appeal to this court in this matter was filed on November 14, 1975. The union, the officers, and Mr. Folcarelli claimed to be appealing from an order entered November 4, 1975. Since an order had been entered on November 4 putting into effect the September 10 decision, this appeal is properly before us. In this case, then, we are limited to consideration of the parties and issues touched by the order of November 4, 1975.

With regard to parties, we note first that the body of the November 4 order does not refer to employees per se as separate and distinct from the union, nor do the employees appeal from the order. We therefore conclude that the municipal employees of the city of Pawtucket, individually and collectively, do not constitute a party to this appeal.

The body of the November 4 order does not refer to the union or to the $10,000 per day fine imposed on it by the September 9 order. No argument was made on behalf of the union either at the September 10 hearing, in the original briefs, or at oral argument in this court. On this record, we hold that the appeal by Council #70, AFSCME, AFL-CIO, Local 1012, must be denied pro forma.[1]

The officers are clearly before us on appeal from their $100 fines and suspended 30-day sentences, but two points require comment. First, as the November 4 order notes,

---

[1]In a supplemental brief filed on December 5, 1975, defendants argue several points on behalf of Council #70, AFSCME, AFL-CIO, Local 1012. As already indicated, however, the order imposing the fine on the union was entered on September 9, 1975, and thereafter was never properly appealed from.

the officers waived a hearing. But the record discloses that they waived a hearing only on the question of whether they were in civil contempt for violating the July 11 preliminary injunction, so the officers may properly raise before us the issue of the validity of the sanction imposed. Second, Mr. Labonte and Mr. Labriole were not named in the July 1 complaint, the July 11 preliminary injunction, or the September 4 motion to adjudge in contempt. However, as officers of the union Mr. Labonte and Mr. Labriole were bound by the July 11 preliminary injunction as much as the named officers were. Super. R. Civ. P. 65(d). Consequently, the trial justice acted properly in ordering contempt citations issued against Mr. Labonte and Mr. Labriole on September 4, 1975. Super. R. Civ. P. 71.

The same reasoning under Super. R. Civ. P. 65(d) and 71 justifies issuance of a contempt citation on September 4 against Mr. Folcarelli. He is properly before us on appeal from the denial of his motion to reconsider imposition of the 60-day sentence.

In sum, the parties now before us with substantive claims are the six officers and Mr. Folcarelli.

With regard to issues, we address ourselves initially to defendants' contention that the July 11 preliminary injunction is unenforceable because it does not specifically describe the conduct sought to be restrained as required by Super. R. Civ. P. 65(d). We find no merit in this argument.

We now reach the most significant portion of this appeal, the issue of whether contempt proceedings and an adjudication of contempt which are not denominated

204

criminal may result in the imposition of criminal contempt sanctions.[2]

As a general rule a proper sanction for civil contempt is remedial in nature, usually either compensating the plaintiff, *Nelson* v. *Progressive Realty Corp.*, 81 R. I. 445, 104 A.2d 241 (1954), or coercing compliance, *Pawtucket School Comm.* v. *Teachers Alliance, Local 930,* 101 R. I. 243, 221 A.2d 806 (1966). Proper sanctions for criminal contempt, on the other hand, are typically punitive and irredeemable. *Nelson* v. *Progressive Realty Corp.*, *supra* at 448-50, 104 A.2d at 242-43; *Pawtucket School Comm.* v. *Teachers Alliance Local 930, supra* at 253-56, 221 A.2d at 813-14. *See Coolbeth* v. *Berberian, supra; Carbon Fuel Company* v. *United Mine Workers of America,* 517 F.2d 1348 (4th Cir. 1975); Re, *Equity and Equitable Remedies,* 62 et seq. (1975).

There is no doubt that the sanctions imposed on the six officers and Mr. Folcarelli are appropriate only for adjudications of criminal contempt. The November 4 order gives each of the officers a $100 fine and a suspended 30-day sentence.[3] Presumably the fines were payable to the

---

[2]This issue and its resolution are similar but not identical to our treatment of the dispositive issue in the recent case of *Coolbeth* v. *Berberian,* 116 R. I. 188, 354 A.2d 120 (1976). The major difference is that the adjudication of contempt in *Coolbeth* was already denominated criminal, while the judgment appealed from here was not labeled criminal or civil.

[3]That part of the order of November 4, 1975, concerning the officers mandates as follows:
"[I]t is hereby ORDERED:
"* * *

"2. That said defendants, James Matley, Roger Viens, Frank Macuga, Joanne Waters, Ralph Labriole, and Oscar Labonte, having admitted their wilful violation of the order of July 11, 1975 and having waived hearing, they are hereby sentenced to the Adult Correctional Institution[s] for the term of thirty (30) days; said sentence suspended. In addition thereto, a fine in the amount of One Hundred ($100.00) Dollars on each defendant is also imposed by the Court."

court and could not compensate the city. Both the fines and the suspended sentences were unconditional, so the officers could do nothing to avoid them. Obviously these sanctions could not coerce the officers to comply with the preliminary injunction, since the strike had already ended on September 7.[4] The November 4 order also denied Mr. Folcarelli's motion to reconsider the 60-day sentence imposed orally on September 5.[5] Like the officers, he could do nothing to avoid this sentence because it was unconditional. Obviously, since the sentence imposed on September 5 was not embodied in an order until September 9, two days after the strike had ended, the sanction could not coerce Mr. Folcarelli to comply with the preliminary injunction.

The question now, as in *Coolbeth,* is whether the court

---

[4] The order of November 4, 1975, closes by declaring:

"Entered as an Order of this Honorable Court *nunc pro tunc* this 4th day of November, A.D. 1975." (Emphasis added.)

Even assuming arguendo that this statement renders the sanctions effective retroactively to September 10, 1975, the order would still have come too late to have coerced compliance with the preliminary injunction.

[5] That part of the order of November 4, 1975, concerning Mr. Folcarelli mandates as follows:

"[I]t is hereby ORDERED:

"1. That the motion of Giovanni Folcarelli to reconsider the sixty (60) day jail sentence imposed by this Court on September 5, 1975 is denied."

The sentence given Mr. Folcarelli on September 5 was embodied in the order of September 9, 1975, as follows:

"4. The court finds further from admissions made by Mr. Folcarelli that he likewise has wilfully and deliberately has violated the order of this Court by advising the union as he has advised them that they had no alternative but to strike. He also is in contempt of this Court.

"5. As a result of the above findings, it is the sentence of this Court that Mr. Folcarelli be incarcerated at the Adult Correctional Institution[s] for a period of sixty days commencing forthwith."

In this appeal our review of the November 4 order denying Mr. Folcarelli's motion to reconsider the sentence necessarily entails consideration of the September 9 order imposing that sentence.

adhered to proper criminal contempt procedures. These procedures are found in Super. R. Crim. P. 42, which in pertinent part reads as follows:

> "(b)  Disposition Upon Notice and Hearing. A criminal contempt [not committed in the actual presence of the court] * * * shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and *describe it as such.* The notice shall be given orally by the justice in open court in the presence of the defendant or, on application of an attorney for the State or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest." (Emphasis added.)

The record is devoid of any indication that the officers or Mr. Folcarelli received any notice that the proceeding contemplated criminal contempt.

The September 4 motion for contempt by the city of Pawtucket alleged "[t]hat the public health and safety of the citizens of the City of Pawtucket are presently threatened" and prayed that the named defendants be held "* * * in contempt of this Honorable Court and that sanctions be imposed upon the defendants, individually and collectively." The allegation of public danger may be suitable for a civil contempt proceeding, for instance, to ensure that the sanctions are sufficiently coercive to gain swift compliance. The phrase "in contempt of this Honorable Court" does not necessarily imply criminal contempt, since it may reasonably encompass the kind of violation of a court order that typically underlies most adjudications of civil contempt. And clearly there is no prayer for criminal contempt sanctions to put defendants on notice that criminal contempt was being alleged.

The citations issued on September 4 against the six

officers and Mr. Folcarelli give no indication of whether the alleged contempt is civil or criminal.

The trial justice's language at the September 5 hearing and in the September 9 order repeatedly refers to defendants' "willful, deliberate disregard" of the preliminary injunction. Standing alone, the word "willful" has no precise meaning but generally indicates intentional or deliberate conduct. We find no basis for holding that the phrase "willful, deliberate disregard" necessarily implies contempt of a criminal rather than civil nature. *Coolbeth* v. *Berberian, supra.*

The headings of all Superior Court papers in the record, including the November 4 order, retain the same docket number as the original complaint, Civil Action No. 75-2140.

Nowhere in the orders of September 4 and 9 and November 4 is contempt denominated civil or criminal.

The transcripts provided us show that no one addressed the question of whether the contempt was civil or criminal until the outset of the hearing on September 10. At that time defense counsel apparently speaking only for the officers, addressed the court as follows:

> "Your Honor, in accordance with the Order of the Court the defendants have presented themselves and are prepared to admit and acknowledge, do admit violation of the Order of the Court and the *civil* contempt arising from that violation. They have presented themselves this morning, voluntarily, to make this acknowledgment, to ask the Court to consider certain facts; that they are willing to waive a hearing on the contempt matter." (Emphasis added.)

Thereafter the trial justice did not comment on counsel's reference to civil contempt but proceeded directly to accept the officers' admission of violation of the preliminary injunction and to mete out the fines and suspended sentences. This is a positive indication that at least the offi-

cers and possibly Mr. Folcarelli in fact believed that the contempt proceedings were civil in nature.

Following *Coolbeth*, we are convinced from the record that the contempt hearings were conducted without adherence to the notice provisions of Super. R. Crim. P. 42(b). In *Coolbeth* we held that where Rule 42(b) is not followed, yet criminal sanctions are imposed, the proper remedy on appeal is to vacate the criminal contempt conviction and remand to the trial court. It should be noted that the judgment of conviction in this case, unlike that in *Coolbeth*, is not labeled criminal. Hence we need not vacate the entire judgment of contempt, for it may stand as a judgment of civil contempt. We need vacate only the judgment's imposition of criminal contempt sanctions. However, this distinction may be of little practical significance since, as in *Coolbeth*, on remand the Superior Court has three options. First, it may impose appropriate civil sanctions. We point out, however, that the usual coercive sanctions could serve no purpose since the strike is over. Second, it may start contempt proceedings over again, this time complying with the provisions of Super. R. Crim. P. 42(b). As to this option it should be noted that in this appeal we do not reach the question of whether, assuming that imposition of punitive sanctions had been preceded by compliance with the provisions of Super. R. Crim. P. 42(b), the underlying conduct alleged here could have supported an adjudication of criminal contempt. And third, the Superior Court may take no action at all and let the matter rest.

Finally, we note that at oral argument we requested counsel to file supplemental briefs on the question of defendants' rights to a jury trial in criminal contempt proceedings. In light of our conclusion that the proceedings were properly conducted only for civil contempt, we do not reach the jury trial question and need not decide it.

This question may become material if the Superior Court chooses to rehear the case as criminal contempt.

Since the order appealed from does not involve Council #70, AFSCME, AFL-CIO, Local 1012, its appeal is denied and dismissed pro forma.

The appeal of the union officers, James Matley, Roger Viens, Frank Macuga, Joanne Waters, Oscar Labonte, and Ralph LaBriole is denied insofar as the finding of contempt is concerned and sustained with respect to the criminal sanctions imposed by the trial justice. Accordingly, the order of November 4, 1975, is sustained with regard to the finding of contempt, and the criminal sanctions imposed therein are vacated.

The appeal of Giovanni Folcarelli is sustained insofar as the imposition of the 60-day sentence is concerned, and the sentence imposed is vacated.

The cases are remanded to the Superior Court for further proceedings in accordance with this opinion.

Mr. Chief Justice Roberts did not participate.

*Moses Kando,* City Solicitor, *Gerald J. Pouliot,* Asst. City Solicitor, for plaintiff-appellee; *Julius C. Michaelson,* Attorney General, *Judith Romney Wegner,* Special Asst. Attorney General, (Amicus Curiae).

*Lynch, Walsh & Cobleigh, Gerard P. Cobleigh,* for defendants-appellants.