**Stephen C. BERGQUIST**

v.

**John CESARIO.**

Nos. 2002–614–M.P., 2003–66–Appeal.

Supreme Court of Rhode Island.

Feb. 9, 2004.

Stephen C. Bergquist, pro se, for plaintiff.

John Cesario, pro se, for defendant.

Present: FLANDERS, GOLDBERG, and SUTTELL, JJ.

## OPINION

PER CURIAM.

This case is the most recent chapter in a long-standing feud that has embroiled the parties in litigation in both the Superior and Family Courts.[1] Here, the defendant, John Cesario (Cesario or defendant), appeals from a Superior Court "corrected order" entered on April 15, 2002, adjudging him in contempt of a restraining order issued on December 10, 2001. In addition, on June 12, 2003, we granted Cesario's petition for certiorari, in which Cesario seeks review of (1) a Superior Court order of May 31, 2001, adjudging him in contempt of a previous court order prohibiting harassment of the plaintiff, Stephen C. Bergquist (Bergquist); (2) a Superior Court order of August 20, 2001, adjudging him in contempt of the same previous court order, and sentencing him to the Adult Correctional Institutions (ACI) for thirty days; (3) a Superior Court order of August 31, 2001, in which he alleges that the trial justice unlawfully restrained him from contacting Bergquist's children as a condition of his release from the ACI; (4) a Superior Court order of October 22, 2001, quashing three subpoenas that he had issued to the children's guardian ad litem and therapists; and (5) a Superior Court order of December 10, 2001, adjudging him in contempt for sending threatening correspondence to the guardian ad litem.

Cesario filed a second petition for writ of certiorari seeking review of various other adverse rulings of the Superior Court. By an order dated June 25, 2003, we denied his second certiorari petition, consolidated the instant petition with his appeal, and directed the parties to appear before us to show cause why the issues raised in the appeal and writ of certiorari should not summarily be decided. After hearing the arguments of the litigants and examining the record and the memoranda filed by the parties, we are of the opinion that cause has not been shown, and we proceed to decide the appeal and the issues before us on writ of certiorari.

---

1. Also, in a related matter, the defendant filed an action in the United States District Court alleging numerous violations of his constitutional and federal civil rights. *John H. Cesario and Carol Bergquist v. State of Rhode Island,* C.A. No. 02–289T. The federal lawsuit was dismissed on January 15, 2003. The United States Court of Appeals for the First Circuit affirmed the judgment on October 14, 2003.

The background of this case, as gleaned from the record and from representations made by the parties in various pleadings and memoranda, is worthy of a Puccini[2] opera, or at least a midafternoon soap opera. It might be described not so much as a love triangle, as a romantic rectangle. Before the controversy began, Cesario was involved in a relationship with Amanda Assante, who was a neighbor of Bergquist and his wife, Carol. Although the precise sequence of events is not clear, at some point Bergquist began a relationship with Ms. Assante; and Mrs. Bergquist, perhaps understandably, filed for divorce. Thereafter, Cesario began dating Mrs. Bergquist.

Not surprisingly, the divorce was acrimonious and a source of much conflict and confrontation, particularly in light of the close proximity of the Bergquist and Assante homes. Sadly, the Bergquist minor children did not entirely escape the rancor that relentlessly engulfed the adults. On November 28, 2000, Bergquist, on his behalf and on behalf of his minor children, filed a complaint for injunctive relief, alleging that Cesario had continually threatened and stalked both him and his children. A temporary restraining order was granted. On December 5, 2000, a permanent mutual restraining order was entered, prohibiting both Bergquist and Cesario from harassing each other. The order did not include the children, however. On May 31, 2001, Cesario was found in contempt of that order. On August 20, 2001, Cesario was again found in contempt and sentenced to the ACI for thirty days. On August 31, 2001, Cesario was released on the condition that he be restrained and enjoined from contacting Bergquist's children, from circling any house in which they are staying or visiting, from going near their school, or from contacting them directly or indirectly.

In October 2001, Cesario sought to vacate this latter order and, in connection therewith, issued subpoenas to the children's Family Court-appointed guardian ad litem and to two therapists. The guardian ad litem, Patricia Murray–Rapoza (guardian or guardian ad litem), filed motions to quash the subpoenas, which were granted on October 22, 2001. In addition, Cesario was ordered to pay a counsel fee of $500 to the guardian. Thereafter, Bergquist filed a motion to adjudge Cesario in contempt, alleging that Cesario sent a threatening communication to the guardian ad litem. On December 10, 2001, Cesario once again was found to be in contempt of previous court orders and was remanded to the ACI. The court afforded him an opportunity to purge himself of the contempt by complying with the following conditions:

"a. The Defendant must appear in court and make a sworn statement that he will refrain from all contact with the Guardian Ad Litem, Attorney Patricia Murray–Rapoza, in the Plaintiff's pending Family Court proceedings; and

"b. The Defendant must appear in Court and make a sworn statement that he will not involve himself in any way in the Plaintiff's pending Family Court proceedings; and

"c. The Defendant must deposit $5,000.00 in cash or by certified check into the Registry of the Providence County Superior Court. Said funds, if deposited, will be given to the Plaintiff if it is adjudged that the Defendant has violated his sworn promise contained in Paragraphs 2(a) or 2(b) above, or has otherwise violated the restraining order entered in this matter. After one year,

2. Giacomo Puccini (1858–1924).

the Plaintiff may apply for release of the funds."

On February 4, 2002, Bergquist filed yet another *pro se* motion to adjudge Cesario in contempt. He alleged that Cesario continued to violate the court's order by writing "harassing, slandering, letters to many prominent Rhode Island politicians and legal services regarding" Bergquist's divorce. Bergquist also alleged that Cesario sent a letter to the Office of Disciplinary Counsel complaining about the behavior of his wife's attorney in connection with their divorce proceeding. A hearing on Bergquist's motion was held on February 25 and 28, 2002.

At the hearing, Cesario admitted writing a letter to disciplinary counsel, but he denied sending the letter. Brenda Rioles, counsel for Bergquist's wife in the Family Court proceeding, testified that she received several pieces of mail, purportedly written by Cesario, on December 22, 2001. She also testified that Cesario called her office in October 2001, and allegedly taped their conversation. She said that she had never invited his contact with respect to the divorce proceeding.

After the hearing, the hearing justice found that Cesario had violated the court order of December 10, 2001, and therefore sentenced him to serve fifteen days in the ACI. The court order allowed Cesario to purge himself of the sentence by depositing $5,000 into the Registry of the Court and required that the $5,000 previously deposited be turned over to Bergquist. The order also restrained and enjoined Cesario from contacting Bergquist's three children. Cesario appealed from this order on March 19, 2002.

Cesario is seeking review of five orders of the Superior Court entered pursuant to hearings on May 31, 2001, August 20, 2001, August 31, 2001, October 22, 2001, and December 10, 2001. Although Cesario asserted additional claims in his memoranda, the grant of certiorari explicitly limited the issues for consideration to those presented in his original petition for writ of certiorari. Any claims not included either in the original petition or in the appeal properly before this Court cannot be addressed.[3]

Bergquist filed a motion to dismiss Cesario's appeal on the basis that the appeal is untimely. He suggested that the time to appeal the court's decisions from August 20, 2001, December 10, 2001, and April 15, 2002, had passed. This Court denied this motion on June 25, 2003. Although an appeal from those orders would be untimely, this Court's grant of the writ of certiorari on these same issues provides a vehicle for addressing Cesario's arguments. Additionally, Cesario's appeal of the amended order of April 15, 2002, is timely. The order originally was entered on February 28, 2002, and the appeal was filed on March 19, 2002. Article I, Rule 4(a) of the Supreme Court Rules of Appellate Procedure requires that the notice of appeal be filed "within twenty (20) days of the date of the entry of the judgment, order, or decree appealed from." Because Cesario met this requirement, we conclude that his appeal is timely.

### Contempt Hearing on May 31, 2001

■ In chronological order, Cesario first seeks review of the order of May 31, 2001, adjudging him in contempt of the restraining order of December 5, 2000. In his petition, Cesario alleges that he was not served properly, nor was any motion to

---

**3.** In his brief, Cesario addresses review of an order restricting future filings in the court system. He did not, however, request this review in the petition for writ of certiorari that ultimately was granted.

adjudge him in contempt filed. Although a transcript of the hearing was not provided, we discern from the record that Cesario was found to be in contempt, but permitted to purge himself by complying with the restraining order for six months. According to Cesario, the hearing justice also indicated that a $5,000 fine would be imposed if he failed to so comply.

In neither Cesario's "Brief" nor his "Appellants Supplemental Memoranda [sic]" does he ever mention any purported procedural defects, nor does he allege any error with respect to the hearing on May 31, 2001. "Errors not claimed, questions not raised and points not made ordinarily will be treated as waived and not be considered by the court." Article I, Rule 16(a) of the Supreme Court Rules of Appellate Procedure. Because the issue was not fairly raised in Cesario's memoranda, it is therefore waived. *See Superior Group Ventures, Inc. v. Apollo II Sign Corp.,* 712 A.2d 359, 360 (R.I.1998) (per curiam).

Moreover, in his "Petitioners [sic] Request for a Writ of Certiorari," Cesario allows that "[n]o harm came of [the] hearing except the Petitioner was adjudged in contempt of a non-threatening phone call," and states that the hearing justice "conducted the hearing very responsibly."

**Contempt Hearing on August 20, 2001**

■ In a motion for contempt dated August 6, 2001, Bergquist alleged that Cesario mailed threatening letters, forged and served a false subpoena on his employer, and violated the restraining order by driving past his house. The motion was heard on August 20, 2001, and as a result Cesario was again adjudged in contempt and sentenced to the ACI for thirty days. Cesario ascribes numerous errors to this proceeding.

Cesario asserts that he never received notice of a contempt motion, contending that he appeared in court that day in response to a witness subpoena *duces tecum.* He asserts, therefore, that the order finding him in contempt is void and should be vacated. Bergquist counters that Cesario was properly served with notice of the contempt motion, and contends that the court record contains the proof of service. The record, however, does not support Bergquist's contention.

A review of the record discloses that Bergquist indeed filed a motion to adjudge Cesario in contempt, yet it was neither stamped by the clerk's office nor referred to on the docket sheet. Moreover, the motion itself does not contain a certificate of service, nor is there an affidavit or any other proof of service in the record indicating that Cesario had been served with a copy of the motion before he appeared in court on August 20, 2001.

■ Once again, however, Cesario has failed to provide this Court with the appropriate transcript. Pursuant to Article I, Rule 10(b)(1) of the Supreme Court Rules of Appellate Procedure, it is appellant's responsibility to order and file "a transcript of such parts of the proceedings * * * as the appellant deems necessary for inclusion in the record." If the appealing party fails to provide a sufficient transcript, the Court cannot perform a meaningful review and has no choice but to uphold the lower court's findings. *State v. Pineda,* 712 A.2d 858, 861 (R.I.1998). We have said on numerous occasions that the "deliberate decision to prosecute an appeal without providing the Court with a transcript of the proceedings in the trial court is risky business. Unless the appeal is limited to a challenge to rulings of law that appear sufficiently on the record and the party accepts the findings of the trial justice as correct, the appeal must fail." *731 Airport Associates, LP v. H & M Realty Associates, LLC,* 799 A.2d 279, 282 (R.I.

2002) (per curiam). Without a transcript we are unable to determine whether Cesario raised an objection to the motion justice, or whether he may have waived any objection to the alleged procedural defects. We decline Cesario's invitation, therefore, to reverse the motion justice's ruling based upon Cesario's allegation of lack of proper notice.

■ Cesario further asserts that, notwithstanding the hearing justice's designation of his finding as one of "civil contempt," the sanction imposed sounded in criminal contempt, thus depriving him of various due process protections, including "rights to an attorney, rights against self incrimination, and rights to a jury trial." It does not appear from the record that either party, both of whom appeared *pro se*, ever reduced the court's order to writing. The only notations in this record are the docket entry that says, "DEF FOUND IN CONTEMPT. 30 DAYS TO SERVE. CONT TO 9–19–01 FOR REVIEW" and a form entitled "CRIMINAL CASE ACTION REPORT/WARRANT FOR COMMITMENT," presumably prepared by the clerk, which clearly says "civil contempt."

■ The distinguishing factor between civil contempt and criminal contempt is the punishment imposed. "The purpose of the sentence in a criminal contempt is punitive so as to vindicate the dignity and authority of the court." *State v. Ricci*, 609 A.2d 951, 952 (R.I.1992) (per curiam) (citing *Nelson v. Progressive Realty Corp.*, 81 R.I. 445, 450, 104 A.2d 241, 243 (1954)). In contrast, punishment in civil contempt is remedial and designed to coerce a person into compliance with an order of the court as well as to compensate a party for any losses that may have resulted from another's failure to comply with a valid court order. *Id.*

Here, it is apparent from the record that the motion justice adjudged Cesario in criminal contempt. An unconditional sentence of thirty days is "appropriate only for criminal contempt because of its punitive, irredeemable, and unconditional quality." *Coolbeth v. Berberian*, 116 R.I. 188, 192, 354 A.2d 120, 124 (1976). Because the thirty-day sentence was unconditional, Cesario could do nothing to avoid it. Cesario's sentence was designed neither to compensate Bergquist, nor to coerce compliance, because the sentence included no conditions for release.

At issue, therefore, is whether the court followed the proper criminal contempt procedures to provide Cesario sufficient notice that he might receive criminal sanctions for violating a civil court order. It is well settled law that Rule 42(b) of the Superior Court Rules of Criminal Procedure expressly requires notification to "the accused that he is being charged with criminal contempt." *Coolbeth*, 116 R.I. at 196, 354 A.2d at 126. Rule 42(b) provides in pertinent part:

> "*Disposition Upon Notice and Hearing.* A criminal contempt * * * shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the justice in open court in the presence of the defendant or, on application of an attorney for the State or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest."

It would appear from a careful review of the record that Cesario did not receive appropriate notice of a motion seeking to hold him in criminal contempt as required by Rule 42(b). As noted above, Cesario maintains that he never received notice of

any motion to adjudge him in contempt, civil or criminal. Clearly, the motion that Bergquist filed did not seek criminal sanctions. Even if notice had been given orally in open court, which is unlikely given the aforementioned designation of "civil contempt," it is clear beyond peradventure that Cesario was not allowed a reasonable time to prepare a defense.

■ Notwithstanding the lack of a transcript, we are convinced from the record that the contempt hearings of August 20, 2001, were conducted without adherence to the notice requirements of Rule 42(b). Contempt proceedings and adjudications of contempt that were not denominated as criminal cannot result in the imposition of criminal contempt sanctions. *City of Pawtucket v. Council No. 70, AFL–CIO, Local 1012*, 116 R.I. 198, 208, 353 A.2d 607, 612 (1976). In cases in which criminal contempt sanctions are imposed without proper adherence to Rule 42(b), "the proper remedy on appeal is to vacate the criminal contempt conviction and remand to the trial court." *Coolbeth*, 116 R.I. at 196, 354 A.2d at 126 (citing *Penfield Co. v. Securities & Exchange Commission*, 330 U.S. 585, 595, 67 S.Ct. 918, 91 L.Ed. 1117 (1947)). Upon remand, the court may take no action, impose the appropriate civil contempt sanctions, or start criminal contempt proceedings again, this time in compliance with the Rule 42 notice provisions. *Id.*

We conclude, however, that because the contempt motion heard on August 20, 2001, was not labeled "criminal," and indeed was designated by the hearing justice as "civil," we need not vacate the entire judgment of contempt. The judgment may stand as a judgment of civil contempt; only the criminal contempt sanctions imposed by the judgment must be vacated. *See City of Pawtucket*, 116 R.I. at 208, 353 A.2d at 612.

■ Cesario also asserts that the Superior Court lacked both personal and subject-matter jurisdiction to hear the contempt motion. His argument, however, lacks merit. This action commenced with Bergquist filing a complaint seeking injunctive relief. General Laws 1956 § 8–2–13 vests the Superior Court with "exclusive original jurisdiction of suits and proceedings of an equitable character" except as otherwise provided by law. On December 5, 2000, Cesario filed an answer to the complaint in which he denied the allegations, but did not contest the court's jurisdiction over him. On that date he also obtained relief from the court in his own right when a mutual restraining order was entered. Clearly the Superior Court had jurisdiction to entertain Bergquist's complaint seeking injunctive relief, and Cesario was a proper party to the action. Moreover, the court retained the authority to hear a motion alleging that its restraining order had been violated and to impose sanctions either to punish such violation or to coerce compliance with the order. The alleged procedural defects, even if true, do not vitiate the court's personal or subject-matter jurisdiction to hear the motion.

### Hearing on August 31, 2001

■ On August 24, 2001, Cesario, through counsel, filed a Motion to Reduce Sentence seeking a reduction in his thirty-day sentence for reasons that he was "remorseful" about his previous actions, which were the subject of his contempt; that he had "an otherwise exemplary record"; and that he was the "owner and sole proprietor of two businesses." The motion was heard on August 31, 2001. Cesario has provided us with only one page of the transcript. It reflects the following statement by the hearing justice:

"I'm going to reduce the sentence to time served, but as a condition of the

reduction I'm reemphasizing you are restrained and enjoined from contacting these children, from circling any house in which they are staying or visiting, or from going to their school or trying to contact them directly or indirectly."

On review by writ of certiorari, Cesario challenges the order restraining him from contacting the Bergquist children as being baseless and illegal. He asserts that an appropriate complaint was never filed; rather the hearing justice entered the order *sua sponte*.

Having determined that the hearing justice's judgment of August 20, 2001, may stand as a judgment of civil contempt, we conclude that he was well within his discretionary authority to impose the restraining order both as an independent order and as a means of allowing Cesario to purge his contempt. Indeed, Bergquist, in his motion to adjudge Cesario in contempt, had prayed for such relief, requesting a "perminiate [*sic*] No Contact order on him keeping him away from my children * * * and myself." Moreover, it was the second occasion in less than three months that Cesario had been found in contempt. Certainly the arrow of incarceration was within the quiver of appropriate sanctions available to the hearing justice, provided that Cesario was given the means of purging himself. Here, we find no error in the hearing justice's marksmanship.

Although we do not have the benefit of the transcripts of the hearings held on August 20 and 31, 2001, we are convinced from a careful review of the record that the hearing justice had ample evidence before him warranting the imposition of an order restraining Cesario from contacting the Bergquist children. Without a transcript, however, we are unable to review the specific evidence.

For the sake of clarity, and in light of the time that has passed since these hearings and the subsequent findings of contempt against Cesario, we vacate the sentence to the ACI in its entirety. The restraining order prohibiting Cesario "from contacting [the Bergquist] children, from circling any house in which they are staying or visiting, or from going to their school or trying to contact them directly or indirectly" shall remain in full force and effect.

### Hearing on October 22, 2001

The next flurry of activity in this matter occurred in October 2001. Cesario filed motions to adjudge Bergquist in contempt and two motions seeking to vacate the restraining orders of December 5, 2000, and August 31, 2001. Bergquist responded by filing a motion to adjudge Cesario in contempt yet again. In anticipation of the October 22, 2001 hearing date, Cesario issued a subpoena to the Bergquist children's court-appointed guardian ad litem in the Family Court divorce action, as well as to one of the children's therapists and to the psychologist who evaluated the parents. The guardian filed a motion to quash the subpoenas, which motion was granted on October 22, 2001. Cesario also was ordered to pay the guardian a counsel fee of $500.

Cesario asks us to vacate this order "on the grounds the Trial Justice abused his discretion," stating that a guardian ad litem "as a private independent attorney for the minors, has a duty to testify in any Court in which evidence or allegations of harm is being committed to the minors." Here, Cesario's failure to provide relevant portions of the transcript is fatal. We find nothing in the record to suggest that the motion justice abused his discretion by quashing the subpoenas or by ordering a counsel fee. It is well established that "[t]he failure to provide the Supreme Court with a sufficient transcript precludes

a meaningful review and leaves us no alternative but to deny the appeal and uphold the trial justice's findings." *Patterson v. Patterson,* 792 A.2d 746, 747 (R.I. 2002) (mem.) (citing *Pineda,* 712 A.2d at 860–61). Because Cesario did not submit the transcript required for a thorough review of the proceedings, we must uphold the hearing justice's order to quash the subpoenas.

### Contempt Hearing on December 10, 2001

■ Cesario next challenges the court order of December 10, 2001, finding him in contempt for sending threatening correspondence to the guardian ad litem. Cesario mailed a $500 check to the guardian in payment of the court-ordered counsel fee on or about October 30, 2001, and included a handwritten note saying, "Witness tampering is against the law. You will pay dearly next year." He now argues that there was no order preventing him from corresponding with the guardian, and, in any event, that he has a right under the First Amendment to contact her. Thus, he contends, there was no evidence, testimony, or basis for a finding that a previous court order was violated. Cesario, in a somewhat disjointed "supplemental memoranda [*sic*]," [4] asserts that he was not restrained and enjoined from contacting the guardian; rather, the hearing justice made only a vague statement that he did not remember, "nor would a reasonable person think that a no contact order statement was issued."

It would appear that the crux of Cesario's argument is that no valid restraining order was issued on October 22, 2001, pro-

hibiting him from contacting the guardian, and that even if the court attempted to issue such an order, it did not comport with Rule 65(d) of the Superior Court Rules of Civil Procedure, which says, "Every order granting an injunction and every restraining order shall be specific in terms; shall describe in reasonable detail the act or acts sought to be restrained * * *."

The record indicates that two motions were before the court on December 10, 2001. Cesario's "Motion to Vacate Nunc Pro Tunc the Order of August 20, 2001," which was denied, and Bergquist's motion to adjudge Cesario in contempt of the purported restraining order of October 22, 2001. In his motion, Bergquist averred that on October 22 the court "admonished [Cesario] and specifically informed him that he could not interfere with [Bergquist] or [his] children by harassment of or contact with professionals or other individuals involved in the children's lives." [5]

■ Again, because Cesario has not provided this Court with any transcripts relevant to the hearing on December 10, 2001, we are unable to review the court proceeding that resulted in the contempt finding. This Court's review on a writ of certiorari is limited "to examining the record to determine if an error of law has been committed." *State v. Santiago,* 799 A.2d 285, 287 (R.I.2002) (per curiam) (quoting *State v. Gautier,* 774 A.2d 882, 886 (R.I.2001)). This Court will not weigh the evidence presented below, but will "rather inspect the record to determine if any legally competent evidence exists therein to support the findings made by

4. Perhaps the tenor of this document is best conveyed by Cesario's accusations that the guardian lied and the motion justice committed fraud, and by his characterization of the hearing justice as a "tyrant and a complete idiot."

5. We also note that on November 9, 2001, Carol Bergquist obtained a restraining order against Cesario that also restrained him from interfering in her divorce case.

the trial justice." *Id.* Here, as noted previously, Cesario has not provided an adequate record for this Court's review. Therefore, we affirm the judgment of the hearing justice on the December 10, 2001 finding of contempt.

### Contempt Hearing on
### February 28, 2002

■ As a result of the finding of contempt on December 10, 2001, Cesario was remanded to the ACI, but allowed to purge himself by making sworn statements in court that he would refrain from all contact with the guardian and that he would not involve himself in any way in Bergquist's pending Family Court proceeding, and by depositing $5,000 into the court registry to be given to Bergquist if Cesario was found to be in contempt again. Less than two months after entry of this order, Bergquist filed a *pro se* motion to adjudge Cesario in contempt. After a hearing on February 25 and 28, 2002, the motion justice indeed found Cesario in contempt for the fourth time, and sentenced him to the ACI for fifteen days. He was allowed to "purge the above sentence" by depositing an additional $5,000 into the court registry. The original $5,000 was turned over to Bergquist. Cesario also was restrained and enjoined from "contacting [Bergquist's] three children * * * in any way either directly or indirectly. He is not to circle any house they are staying in or visiting or from going near their school or anywhere else they may be." On March 19, 2002, Cesario filed an appeal. On April 15, 2002, a "Corrected Order" was entered that added a provision that Cesario could apply for release of the money on deposit after one year. We will treat the appeal, therefore, as from the April 15, 2002 adjudgment of contempt.

On appeal, Cesario alleges that he was found in contempt for writing a letter to the Disciplinary Counsel of the Supreme Court of Rhode Island accusing Brenda Rioles, Carol Bergquist's divorce attorney, of witness tampering, and for mailing a letter containing death threats. Cesario argues that there was no clear and convincing evidence that he violated the court's restraining order of December 10, 2001, that required him to make a sworn statement that he would not involve himself in any way in Bergquist's Family Court proceedings. He contends that even though he composed a letter to disciplinary counsel about witness tampering by Ms. Rioles, he never sent the letter, and thus, it did not constitute interference in the divorce proceedings.

In this instance, Cesario provided a complete transcript of the hearing that resulted in the hearing justice's finding that he was in contempt of court orders "directing him not to interfere with, directly or indirectly, Mr. Bergquist as he goes about his business, including, his business of invoking the judicial process to get his divorce."

■ "Civil contempt * * * is established when it is proved by clear and convincing evidence that a lawful decree was violated." *Biron v. Falardeau,* 798 A.2d 379, 382 (R.I.2002) (per curiam) (quoting *Durfee v. Ocean State Steel, Inc.,* 636 A.2d 698, 704 (R.I.1994)). This Court has stated that findings of fact in contempt proceedings are within the sound discretion of the hearing justice and such findings will not be disturbed on appeal "unless they are clearly wrong or the [hearing] justice abused his or her discretion." *Biron,* 798 A.2d at 382.

It is clear from the transcript that the hearing justice thoroughly considered the evidence and weighed the credibility of the witnesses. He spoke of "the inherent powers of the Court to punish contempts in order to preserve and protect the integrity of the judicial system," and recognized

that the alleged contempt dealt "with the functioning of the Courts by its judges, lawful officers such as attorneys and guardians ad litem, and, of course, the Court's function for the benefit of those people who have to resolve their differences by going into the Court."

The hearing justice found as a fact that Cesario authored a letter to disciplinary counsel, but that he never mailed it to disciplinary counsel. He further found, however, that Ms. Rioles received a copy of the letter sometime after December 21, 2001. He noted that, although the final judgment in the Bergquist divorce already had been entered at that time, "the appeal period was still alive and vibrant," and concluded that the divorce proceedings were still active. He then opined, "My Order to Mr. Cesario of December 10th to stay away from these proceedings could not be more clear."

The hearing justice said that "there is clear and convincing evidence that Mr. Cesario sent that letter to Brenda Rioles." In discounting Cesario's credibility, he said:

"The notion that he typed this on his computer and then simply says that he showed it to a few of his friends, and then miraculously this letter got over to Brenda Rioles, and suggests one way or the other that either his friends must have taken it, and they mailed it, or that Mr. Bergquist purloined it, stole it, lifted it from counsel's papers in a courtroom that has sheriffs, clerks and indeed the judge present, as well as experienced and seasoned and cautious counsel present, that he somehow got his hands into the lawyer's papers or into Mr. Cesario's papers, there is no evidence to support that at all. There is no credible evidence of any sort to lead to that conclusion. And, the suggestion that I don't know how it got there is mind-boggling,

especially in light of some of the other situations * * *."

He added:

"I do not take it lightly, and I do not take it kindly that Mr. Cesario has berated and threatened and interfered with the orderly—with personnel connected with this litigation, judges in the Family Court, the record will show and, most importantly, Officers of the Court trying to serve the wheels of justice, if you will."

Finally, in finding Cesario to be in contempt, the hearing justice said:

"I find specifically that he sent that letter to Brenda Rioles. He had no lawful cause to do so, and that was in a direct thumbing of his nose and a defiance of this Court's Order, which Order was designed to effectuate the orderly workings of the Court proceedings in the Family Court."

After reviewing the transcript, we conclude that the hearing justice did not abuse his discretion because there was ample evidence to support his finding that Cesario violated the restraining order. We affirm the trial court's judgment of contempt on April 15, 2002.

For the reasons stated herein, we quash the thirty-day sentence imposed on August 20, 2001, and affirm the judgment of the Superior Court in all other respects. The papers shall be remanded to the Superior Court.

Chief Justice WILLIAMS and Justice FLAHERTY did not participate.