NATHAN KAMINOW *et al. d.b.a.* KAMINOW BROTHERS *vs.* COOPER-KENWORTHY INCORPORATED.

MAY 22, 1952.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

BAKER, J. This action of trover and conversion was heard in the superior court by a justice thereof sitting without a jury. He found for the defendant and the plaintiffs thereafter duly prosecuted to this court their bill of exceptions which contains only an exception to the decision of the trial justice.

There is little or no dispute as to the facts. The plaintiffs were partners doing business as textile converters in the city of New York. The defendant is a Rhode Island corporation located in the city of Providence and is in the business of dyeing yarns and other materials. The goods alleged by plaintiffs to have been converted by defendant to its own use were eleven warps of bleached white mercerized warp twisted yarn valued at $2,362.10.

It appears from the testimony and exhibits in evidence that the plaintiffs were the owners of the yarn in question and on December 1, 1948 one of them conferred in New York City with the president of Carlen Textile Mills, Inc., a New York corporation, hereinafter referred to as Carlen, which wished to purchase yarn for warps. Credits and other matters were discussed and eventually plaintiffs accepted Carlen's order for the yarn involved herein. Also on December 1 plaintiffs sent to defendant a so-called "converting order" relating to the eleven warps of yarn and stating that they were being shipped from the Champagne Winding Company in whose possession they actually were. This order reads as follows: .

> "Converting Order
> Kaminow Bros.
> Yarns          No. 15714
> 3-5 Waverly Place
> Shipped via: Champagne Winding Co
>                   New York, Dec 1 1948
>           To Cooper Kenworthy
>                Cust 594     12/2/48
>      Please convert the following
> 11 Warps 30/2 Bleached White Merc Warp Twist
>           392/6000          2054 lbs
>      *Hold for Further Instructions*"

Under date of December 3 defendant acknowledged receipt of the yarn.

On December 2 plaintiffs charged Carlen on their ledger in the amount of $2,362.10 for such yarn and on the same date sent an invoice covering the goods in dispute to the New York office of Carlen where it was received by its president. That invoice contained the following language:

```
                        "Kaminow Bros.
Our Order No. 2366        Novelty
                          Yarns           Invoice No. 68880
                   3-5 Waverly Place, New York 3
Shipped via   At Cooper                   Date   12/2/48
              Kenworthy
                                          Terms Net 30 Days
                                          No Anticipation Allowed
Sold   Carlen Textile Mills Inc.
  To   40 E. 34th St.
       N.Y.C.
                              Shipped To
                         Cooper Kenworthy Inc.
                         1-15 Pomfret St.
                         Providence, R. I.

      Description             Net     Price   Amount    Total
                              Lbs. Oz.
11 Warps 392/6000 -30/2
Bleached White Merc. Warp twist.  2054-0   1.15   2362.10   2362.10
Order Completed"
```

After receiving the above-described invoice the president of Carlen went from the New York office to that company's mill in New Bedford, Massachusetts, stopping on his way at defendant's office in Providence. He gave the correct warp numbers of the yarn to defendant's president and general manager and also showed him the invoice of such goods that had been sent by plaintiffs to Carlen. Orders were then given defendant by the president of Carlen to dye eight warps certain colors, to leave three warps unprocessed, and to deliver all the warps to that corporation in New Bedford. The above work was completed and by December 9 the goods had been shipped by defendant as directed. Subse-

quently the original invoice itself was given by the president of Carlen to defendant.

In March 1949 one of the plaintiffs called at defendant's plant and had a conversation about the goods in question. Starting on April 4, 1949, about four months after the transaction under consideration took place, there was correspondence between the parties. The plaintiffs demanded that the yarn be shipped to them or that defendant pay for it, but the latter denied any liability therefor. On April 6, 1949 Carlen was adjudged bankrupt in New York.

The plaintiffs contend in substance that they had retained title to the yarn in question; that they did not intend to transfer said title to Carlen on December 2, 1948; that when they had the yarn sent to defendant the notation on the converting order *"Hold for Further Instructions"* referred to instructions plaintiffs would give; and that defendant, by acting upon Carlen's order to dye and deliver the goods to the latter, wrongfully converted them without first communicating with plaintiffs. They further argue that even if title to the yarn did pass to Carlen, they nevertheless retained the right to possession thereof by virtue of a lien for payment under the provisions of the Sales Act, general laws 1938, chapter 462.

On the other hand defendant urges generally that, according to the invoice in evidence, plaintiffs made an absolute sale of the yarn to Carlen on December 2 and divested themselves of title thereto and all interest therein. They also urge that the notation to hold for further instructions was ambiguous in that it did not show who was to give such instructions and did not in any way refer specifically to the plaintiffs in that connection. The defendant maintains that in the circumstaces it acted reasonably in deciding, after being shown the invoice which plaintiffs had sent to Carlen, that such corporation was the owner of and had undisputed title to the yarn.

In *Donahue* v. *Shippee*, 15 R. I. 453, the court approved a definition of a conversion which contained the following

language: "The action being founded upon a conjunct right of property and possession, any act of the defendant which negatives, or is inconsistent with, such right, amounts in law to a conversion. * * * Does he exercise a dominion over it in exclusion or in defiance of the plaintiff's right? If he does, that is in law a ·conversion, be it for his own or another's use." In the case at bar the trial justice reviewed the evidence and in making his decision stated: "If we come to the conclusion that Kaminow did not own the property after December 2, then there can be no trover and conversion. * * * So if Kaminow had transferred title to the yarn to the Carlen Textile Mills, then Kaminow is no longer the owner and Carlen is the owner. * * * I hold that transfer of title of this yarn was made by Kaminow Brothers, plaintiffs here, on December 2, 1948 to the Carlen Textile Mills. Since they didn't own the property, since they had completely divested themselves of title, divested themselves of right of possession, it seems to me there can be no recovery here."

Upon consideration we are of the opinion that the decision of the trial justice is amply supported by the evidence and in particular by the exhibits herein. He pointed out that while the order of December 1, 1948 to the defendant from the plaintiffs was only a memorandum, yet the invoice of December 2 to Carlen showed an actual sale to the latter. The invoice contained full information concerning the yarn, such as its price, weight, warps, numbers, location, *etc.* and included statements that the goods were sold to Carlen and that the order was completed. Furthermore the invoice contained neither a reservation as to the passing of title nor any withholding of the right to possession. It did not state the transaction to be a bailment, a consignment, or a mere transfer of possession of some kind with reservation of title in the seller. No conditions as to payment were set out except that the terms were net 30 days. Moreover on that same date the plaintiffs in their ledger charged against Carlen the amount appearing on the invoice as

the price of the yarn. The trial justice's above findings, which we have approved, clearly do not bring the instant case within the quoted definition of a conversion, the plaintiffs having completely divested themselves of title and the right to possession of the goods.

In our judgment plaintiffs' argument that under the provisions of chapter 462, *supra*, they retained the right to possession of the yarn by virtue of a lien thereon for its payment is without merit. In view of the circumstances disclosed by the evidence and the findings of the trial justice based thereon it is clear that such chapter is not applicable in this case and furnishes no assistance to the plaintiffs. No facts appear herein which support the plaintiffs' claim of any such lien for the payment of the yarn. In our opinion the decision of the trial justice is without error.

The plaintiffs' exception is overruled, and the case is remitted to the superior court for entry of judgment for the defendant on the decision.

*David Hassenfeld,* for plaintiffs.

*Hart, Gainer & Carr, Hoyt W. Lark,* for defendant.