In re Aram Kamer BERBERIAN,
Bankrupt.

Amelia JOYCE, Plaintiff,

v.

Aram Kamer BERBERIAN, Defendant.

Bankruptcy No. 75–613.

United States Bankruptcy Court,
D. Rhode Island.

July 8, 1981.

Samuel Olevson, Providence, R. I., for bankrupt-defendant.

Alden C. Harrington, Gary Powers, R.I. Legal Services, Inc., Providence, R. I., for plaintiff.

ARTHUR N. VOTOLATO, JR., Bankruptcy Judge.

Heard on the complaint of Amelia Joyce to have certain claims against the Defendant, attorney for Landlord Eviction Service (a self-help eviction service), declared nondischargeable under §§ 17(a)(2) and 17(a)(8) of the Bankruptcy Act,[1] 11 App.U.S.C.A. §§ 35(a)(2), 35(a)(8) (1979). By agreement, that hearing was confined to the issue of the dischargeability of said claims, with a separate hearing to be held, if needed, at a later date to determine damages.

The hearing disclosed the following facts: On March 26, 1971, the Plaintiff, who was a tenant at 185 Cole Avenue, Providence, Rhode Island, returned to her apartment to

1. Because the Defendant's bankruptcy petition was filed prior to the October 1, 1979 effective date of the Bankruptcy Reform Act of 1978, the provisions of the 1898 Bankruptcy Act are controlling.

discover a truck, loaded with her belongings, parked in front of the building, and the Defendant standing nearby.

Realizing that she was being evicted, the Plaintiff went to a public telephone and called her attorney. After completing the call, she returned to her apartment and locked the front door with a chain lock. At that point the Defendant and the workmen who had been removing her belongings ceased their actions and left the scene. Later that same day, the Plaintiff's attorney filed a complaint in the Providence County Superior Court requesting an injunction against the eviction, and a temporary restraining order was issued.

The next morning, Constable Roy A. Costa arrived at the Plaintiff's apartment with the temporary restraining order, for service on the Defendant in case he returned to the apartment to complete the eviction. After waiting several hours, the Defendant and a workman arrived by truck at the apartment building. The front door was unlocked from the outside, apparently by key, and the chain lock securing the door from the inside was knocked off. The door was violently pushed open, revealing the Defendant and one workman. As soon as the Defendant entered the apartment, Constable Costa served him with the restraining order. After reading the order, the Defendant and the workman left the apartment and drove away, without further incident.

The Plaintiff seeks to have her claim against the Defendant, for alleged damages resulting from the events described above determined to be nondischargeable under §§ 17(a)(2) and 17(a)(8)[2] of the Bankruptcy Act, and to have judgment entered in her favor.[3]

### I

In this case, the central question relative to the issue of dischargeability is whether the acts of the Defendant constituted "willful and malicious" conduct within the meaning of §§ 17(a)(2) and 17(a)(8).

The Defendant maintains that the attempted eviction of the Plaintiff was undertaken in good faith, and thus did not constitute willful and malicious conduct. His main contention is that at the time of the eviction he had interpreted the Rhode Island statute outlawing self-help eviction, R.I. Gen. Laws § 34–18–17 (1980 supp.),[4] as inapplicable to the situation here. His reasoning is as follows: Prior to the eviction, and on his advice, title to the property where the Plaintiff lived was transferred from the lessors, Howard and Louise Goldsmith, to their son Brian, so that, in the Defendant's opinion, the new owner would not be bound by the prohibition of the statute.[5] He argues that although the Rhode Island Supreme Court subsequently rejected similar arguments relating to the scope of the statute's prohibitions, *see Coolbeth v. Berberian*, 112 R.I. 558, 313 A.2d 656 (1974) and *Coolbeth v. Berberian*, 116 R.I.

---

2. Sections 17(a)(2) and 17(a)(8) of the Bankruptcy Act provide: "A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as ... (2) are liabilities ... for willful and malicious conversion of the property of another; ... or (8) are liabilities for willful and malicious injuries to the person or property of another other than conversion."

3. Section 17(c)(3), 11 App.U.S.C.A. § 35(c)(3) (1979), provides

    After hearing upon notice, the court shall determine the dischargeability of any debt for which an application for such determination has been filed, shall make such orders as are necessary to protect or effectuate a determination that any debt is dischargeable and, if any debt is determined to be nondischargeable, shall determine the remaining issues,

render judgment, and make all orders necessary for the enforcement thereof.

4. Section 34–18–17 reads:

    The right of a landlord or a reversioner to utilize "self-help," so called, whether pursuant to the common law or pursuant to any agreement in writing or by parol, to re-enter and repossess himself of land, buildings or parts of buildings leased upon non-payment of rent is prohibited.

5. Apparently the transfer of the property by the Goldsmiths to their son was an attempt to break the lease so that the Plaintiff would take on the status of a trespasser and thus be outside of the Defendant's perception of the limits of the statute's prohibitions.

188, 354 A.2d 120 (1976),[6] the "fact that the bankrupt guessed wrong in March of 1971 as to what the Supreme Court would say in 1974 or 1976 cannot convert his otherwise good faith actions into willful and malicious conduct." (Defendant's Memorandum at 1).

The meaning of "willful and malicious" conduct has been considered by this Court several times within recent years, *see, e. g., In re Duchesne*, 1 B.C.D. 1096 (D.R.I., 1975); *First Bristol County National Bank v. Burbank*, B.K. 75–12 (D.R.I. August 6, 1976), and by courts in other jurisdictions, *see, e. g., Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934); *Rees v. Jensen*, 170 F.2d 348 (9th Cir. 1948). In *In re Drowne*, 124 F.Supp. 842 (D.R.I. 1954), District Judge Day defined "willful and malicious injury" under the Bankruptcy Act as injury arising "from a wrongful act, done intentionally without just cause or excuse." *Id.* at 843. Special malice or particular hatred, spite, or ill will toward the plaintiff need not be shown. *Id.*, citing *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904). Similar construction is given to the phrase "willful and malicious conversion." *Davis v. Aetna Acceptance Co.*, supra.

In the case at bar, the Defendant's acts certainly were intentional, and if found to be willful and malicious, would be nondischargeable under §§ 17(a)(2) and 17(a)(8). The issue, according to the Defendant, is whether his alleged misinterpretation of the self-help eviction statute, as a matter of law, removes his conduct from the "willful and malicious" category.

Here, the Defendant was acutely aware that § 34–18–17 was intended to prevent self-help evictions, since he had been a principal in several incidents which precipitated the passage of that statute. *See, Donovan v. Berberian*, B.K. 75–613 (D.R.I. Jan. 31,

1978). This is not a situation where a naive defendant either misunderstood or was unaware of the existence of a statute prohibiting certain activity. Rather, the Defendant consciously attempted to technically avoid the operation of § 34–18–17 by transferring title to the property from the Goldsmiths to their son. While such legal maneuvering is certainly a right in which the Defendant is entitled to indulge, he does so at his peril and without the hindsight now available through the decisions in *Coolbeth v. Berberian, supra*.

The Defendant's reasoning is similar to that advanced in *In re Nance*, 556 F.2d 602 (1st Cir. 1977), where the bankrupt argued that his wrongful retention of wages (which had been assigned to a bank) was not willful and malicious because the bank had failed to record the assignment. Rejecting this argument, the court stated that "there is little shelter for Nance under the alleged confusion as to whether, in some hyper-legal sense, he could wiggle out of his undertaking." *Id.* at 611. I agree with the reasoning in *Nance* because I see these dischargeability cases revolving around questions of intent, rather than on compliance or noncompliance with technical statutory provisions.

Here, the Defendant's contention that he relied in good faith on a misinterpretation of § 34–18–17, in light of his admitted attempt to avoid the clear language of the statute, does not, as a matter of law, insulate him against a finding that his conduct was willful and malicious under § 17(a) of the Bankruptcy Act. These are questions of fact, within the jurisdiction of this Court, and properly before us for determination as to dischargeability.

## II

Plaintiff asserts three separate claims against the Defendant; (1) conversion of

---

**6.** Two such arguments dealing with § 34–18–17 were rejected by the Rhode Island Supreme Court in these cases: (1) that the statute did not apply to independent entrepreneurs, 112 R.I. at 566, 313 A.2d 656, and (2) that the statute was limited to tenants who were in arrears in payment of rent and was inapplicable to trespassers, 116 R.I. at 192, 354 A.2d 120.

The Rhode Island Supreme Court emphatically rejected both of these arguments, stating that "the statutory scheme appears sufficiently comprehensive on its face to prohibit *all* self-help evictions." *Id.*

her property, (2) assault, and (3) intentional infliction of emotional distress.

### A. Conversion

■ An action for conversion arises when one interferes with the rights of the true owner to his or her possession of the property. *See Donahue v. Shippee*, 15 R.I. 453, 8 A. 541 (1887); *First Bristol County National Bank v. Burbank, supra*, at 11; *Kaminow v. Cooper-Kenworthy, Inc.*, 79 R.I. 352, 89 A.2d 165 (1952). It is undisputed in this case that certain belongings of the Plaintiff were removed from her apartment and moved away. It is less clear, however, what role the Defendant played in this aspect of the case.

The Defendant argues that his status in the eviction process was that of an overseer to insure order and lawfulness. (Defendant's Memorandum at 2). In the Defendant's view, any conversion was not imputable or chargeable to him, but only to the workmen carrying out the eviction, or to the Landlord Eviction Service and its owner, Charles Haigh.

■ The evidence fails to sufficiently establish that the Defendant directly participated in or directed the removal of the Plaintiff's property from her apartment. Absent a clear showing that the Defendant's participation in the removal of the property was more than that of an "overseer", or legal counsel, the Plaintiff's claim against him for conversion of her property must be denied.

### B. Assault

The evidence regarding the second allegation of the Plaintiff's complaint is conflicting and contradictory.

The assault claim arises from events that allegedly occurred the morning after the initial attempted eviction. According to the Plaintiff, she was in the kitchen with Constable Costa when she heard a truck arrive, and a few moments later, a key turned in her front door. She immediately ran towards that entrance, and as she was approaching the door, the door was thrown open revealing the Defendant and one workman. According to the Plaintiff, the Defendant entered the apartment and shoved her aside as he went into her living room.

The testimony of Constable Costa conflicts with that of the Plaintiff in several respects. Costa testified that when he heard the truck arrive, he ran from the kitchen to the front door, and that the Plaintiff was in some other part of the apartment, behind him, and away from the front door. Also, Costa testified that at no time did the Defendant come into contact with the Plaintiff, nor did the Defendant shove her aside.

The Defendant testified that upon entering the apartment he saw Costa, with the Plaintiff standing behind him. Costa immediately handed the Defendant a copy of the temporary restraining order, and after reading it, he left promptly with the workmen.

■ Rhode Island law defines an assault as a "physical act of a threatening nature which puts an individual in fear of immediate bodily harm." *Webbier v. Thoroughbred Racing Protective Bureau, Inc.*, 105 R.I. 605, 614, 254 A.2d 285 (1969); *Liu v. Sugarman*, 105 R.I. 727, 254 A.2d 753 (1969). Here the evidence is conflicting as to the Plaintiff's location in the apartment and whether she was reasonably placed in imminent fear of bodily harm.

In my view the account of Constable Costa regarding the events in question, which is basically consistent with the testimony of the Defendant, is more plausible than that of the Plaintiff. As it was noted in the *Donovan* case, "an eviction is an emotion-laden event" which can impair the objectivity of the person being evicted. *See, Donovan v. Berberian*, BK 75–613 (D.R.I. Jan. 31, 1978). The testimony of Constable Costa, who impressed the Court as an objective witness to the events surrounding the alleged assault, must be given considerable weight.

■ The Plaintiff has failed to establish that she was placed in reasonable fear of

imminent bodily harm by the Defendant's conduct, and having failed to meet the burden of proof on this issue, her claim for damages arising from the alleged assault is denied.

### C. Intentional Infliction of Emotional Distress

The third allegation of the complaint is that the Defendant intentionally inflicted severe mental distress on the Plaintiff.

The tort of intentional infliction of mental distress, standing alone, was not recognized as an independent basis for tort liability until recent years. Traditionally, recovery for emotional distress was limited to situations where the distress resulted from the commission of a recognized common law tort, such as assault or trespass. See George v. Jordan Marsh Company, 359 Mass. 244, 268 N.E.2d 915, 919 (1971).

The past thirty or forty years, however, have seen a departure from this view, and judicial recognition that there should be a distinct remedy for emotional suffering. The Restatement of Torts has been revised several times to reflect the changes in this area. Compare Restatement of Torts § 46 (1934) to Restatement (Second) of Torts § 46 (1965). The rule which currently appears in the Restatement provides:

> (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

Restatement (Second) of Torts § 46 (1965).

The Rhode Island Supreme Court has recognized both negligent and intentional infliction of mental distress as an independent cause of action. Bedard v. Notre Dame Hospital, 89 R.I. 195, 151 A.2d 690 (1959). Recently, that court expanded the scope of recovery for mental distress by allowing recovery to a mother who witnessed the death of her child caused by the defendant's negligence, although the mother was never in physical danger. D'Ambra v. United States, 114 R.I. 643, 338 A.2d 524 (1975). In D'Ambra the court stated:

Certainly the law should not compensate for every minor psychic shock incurred in the course of daily living; it should not reinforce the neurotic patterns of society. At some point, however, a person threatened by severe mental injury should be able to enforce his claim to reasonable psychological tranquillity.

114 R.I. at 653, 338 A.2d 524 (footnote omitted).

The question here is whether the Defendant's actions during the attempted eviction constitute the type of conduct which the Bankruptcy Act contemplates should not be discharged. I think that it does.

The Defendant's actions and conduct on the day in question were sufficiently willful and malicious to bring this case within the scope of § 17(a)(8). I base this conclusion on the fact that the Defendant was acting with full knowledge of the emotional upset experienced by the Plaintiff the prior day, during the eviction attempt which was terminated primarily because of the Plaintiff's emotional state and her frantic efforts to secure the apartment from further intrusions. Despite this, and aware of the Plaintiff's susceptibility to intimidation, the Defendant forcibly broke open her door the next morning without regard for the emotional well-being or physical safety of anyone inside. This conduct, in my view, constituted an attempt to harass and intimidate the Plaintiff, probably with the expectation that the resulting disturbance would distract the Plaintiff from further interfering with the completion of the eviction.

Considering all of the circumstances, decision is rendered in the Plaintiff's favor regarding her claim for intentional infliction of emotional distress, which claim is determined to be nondischargeable under § 17(a)(8) of the Bankruptcy Act. A separate hearing will be scheduled to determine the damage sustained by the Plaintiff as a result of the Defendant's conduct.