### In re Aram Kamer BERBERIAN, Debtor.

### Bankruptcy No. 8100970.

United States Bankruptcy Court, D. Rhode Island.

Nov. 10, 1983.

---

Samuel Olevson, Providence, R.I., for debtor.

Michael Devane, Atty., Providence, R.I., for Amelia Joyce.

## DECISION ON OBJECTION TO CLAIM OF AMELIA JOYCE

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on June 16, 1983 on the debtor Aram Berberian's objection to Claim # 9 filed by Amelia Joyce. Before the Court is the determination of the damages sustained by Joyce as a result of Berberian's attempted eviction of Joyce from her apartment on March 27, 1971.

The facts and travel of this matter are extensive and involved, but to make a long story short, this is what happened:[1] In 1975, Berberian filed a petition under Chapter VII of the old Bankruptcy Act, and Joyce filed a complaint to have certain claims for damages arising from an attempted eviction proceeding declared nondischargeable. On July 8, 1981, after hearing, the Court entered its decision holding that the portion of Joyce's claim for intentional infliction of emotional distress was nondischargeable,[2] but reserved the determination of damages for a separate hearing. Prior to the hearing on damages, Berberian filed a Chapter 13 petition on December 4, 1981, and objected to Joyce's proof of claim in the amount of $100,000 for the claim previously determined to be nondischargeable.

A review covering only the most recent portion of the travel of this matter preceding the June 16, 1983 hearing demonstrates not only the claimant's role in contributing to the long delay in bringing this matter to a conclusion, but also that claimant's actions are a significant factor in this Court's assessment or determination of what portion of her present complaints are attributable to the defendant's conduct. The debtor's objection to Joyce's claim was filed on October 13, 1982. At that time the Court scheduled a hearing date of November 22, 1982 and ordered a joint pre-trial order to be filed by November 18. That order was not complied with, as Joyce was no longer represented by the attorney who appeared in her behalf at the earlier confirmation hearings.[3] At the request of Ms. Joyce, a pre-trial conference, rather than a trial, was held on November 22, at which she appeared, but pro se. Another delay was requested, and granted, over the debtor's objection, so that Joyce could obtain new counsel. At the continued pre-trial conference on December 14, Joyce again appeared without counsel, and the matter was again postponed. A pre-trial conference was scheduled for March 1 and then continued

---

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052.

2. *Joyce v. Berberian (In re Berberian)*, 12 B.R. 465 (Bkrtcy.D.R.I.1981).

3. Amelia Joyce filed an objection to confirmation and appeared at several confirmation hearings with counsel. Most of the delay referred to is in connection with Joyce's efforts to obtain new counsel to represent her in presenting the instant damage claim.

at Joyce's request to March 15. In the meantime, Joyce did obtain new counsel. On March 15, the matter was continued to allow her new attorney time to gather medical evidence. On April 19, counsel for both parties appeared at a pre-trial conference at which time the Court scheduled a trial date of June 13. This date was requested by Joyce in order to allow her attorney sufficient time to prepare testimony of doctors by whom she was allegedly treated. Again, no joint pre-trial order was filed, and on June 13, the trial date, counsel for Joyce appeared and stated that he had been unable to contact his client. Not surprisingly, the debtor, who has consistently opposed all requests for delay, asked that default judgment be entered. Upon the plea of Joyce's counsel, the Court allowed him to telephone his client from chambers. Amelia Joyce answered, but stated that because of the bus schedule, she could not travel to the Courthouse to attend the trial that day, so the matter was continued again. Finally, after considerable and obvious inconvenience to the Court and to the debtor, a hearing was held on June 16, 1983, beginning at 8:00 a.m.

Counsel for Ms. Joyce represented to the Court that, after investigation, he was unable to produce any medical evidence in her behalf, but that he intended to proceed, solely with the testimony of the claimant. Amelia Joyce testified about headaches and nightmares which she has experienced since Berberian's break-in on May 27, 1971, and requests compensatory and punitive damages in the total amount of $100,000. Berberian argues that such damages are unwarranted because these alleged problems appear to be based upon the loss of her belongings, not upon the breaking down of the door, which the Court had previously found to be the only basis of liability. *See Joyce v. Berberian (In re Berberian),* 12 B.R. 465 (Bkrtcy.D.R.I.1981).

## COMPENSATORY DAMAGES

The events and conduct which constitute the basis for Berberian's liability were determined by this Court in its earlier decision:

> Defendant was acting with full knowledge of the emotional upset experienced by the plaintiff the prior day, during the eviction attempt which was terminated primarily because of the plaintiff's emotional state and her frantic efforts to secure the apartment from further intrusions. Despite this, and aware of the plaintiff's susceptibility to intimidation, the defendant forcibly broke open her door the next morning without regard for the emotional well-being or physical safety of anyone inside. This conduct, in my view, constituted an attempt to harass and intimidate the plaintiff, probably with the expectation that the resulting disturbance would distract the plaintiff from further interfering with the completion of the eviction.

12 B.R. 465 at 469. This entire incident, from the time of the forced entry, until the time when Berberian left, immediately after seeing the temporary restraining order presented by Constable Costa, lasted a maximum of two to three minutes.

■ Joyce testified that she has suffered severe headaches and nightmares since the event. She also stated that she feels apathetic and helpless to this day. No medical records were introduced into evidence and no medical testimony was presented, although the claimant was given every opportunity and an inordinate amount of time for trial preparation. Based on the meager record before the Court, we conclude that Joyce has not shown that the ailments she complains of are the proximate result of Berberian's forcible entry into her apartment. *Gagnon v. Rhode Island Co.,* 40 R.I. 473, 101 A. 104 (1917) (defendant's conduct must be proximate cause of plaintiff's harm); *See generally* 22 Am Jur 2d *Damages* § 196 (1965), n. 7. Indeed, the evidence indicates that the conditions complained of were pre-existing, and of long standing. *See generally Main Realty Co. v. Blackstone Valley Gas & Electric Co.,* 59 R.I. 29, 193 A. 879 (1937) (tort action includes damages for natural and probable consequences of wrong). Although there

can be no disagreement that tort defendants take their plaintiffs as they find them, 22 Am Jur 2d *Damages* § 122 (1965), n. 11 and cases cited therein, it must be equally true that such defendants may not be held accountable for every subsequent moment of discomfort experienced by hypersensitive plaintiffs, in the complete absence of evidence to establish any causal relationship between the plaintiff's complaints and defendant's conduct.

Although no damages may be awarded here for the claimant's alleged longterm problems, because of a total absence of proof of causation, Joyce is entitled to be compensated for those damages suffered directly as a result of Berberian's willful intrusion, and such damages need not be proved through expert or opinion evidence. *Lincoln First Bank of Rochester v. Baker (In re Baker)*, 18 B.R. 243 (Bkrtcy. W.D.N.Y.1982) (damages of emotional distress can be presumed to result from intentional invasion of protected right); *See generally* Restatement (second) of Torts, § 912 (1979). The Court accepts Joyce's representation that she was in a highly nervous state at the time in question, due to the attempted eviction the day before and because of the stress of working on her master's thesis.[4] Even without the benefit of medical evidence or expert testimony on the subject, it was obvious that Amelia Joyce is a person who is extremely susceptible to emotional upset. Based on the record in this protracted case, the appearance of the witness, and acknowledging the subjectivity of any such decision, I find that reasonable compensatory damages resulting immediately from the events in question are $500.

## PUNITIVE DAMAGES

Generally, punitive damages are awarded as punishment to the defendant and as a warning and deterrent to the commission of similar offenses in the future. 22 Am Jur 2d *Damages* § 237 (1965). Bankruptcy courts, following state law, have awarded such damages. *See Glazer v. Alley (In re Glazer)*, 25 B.R. 329, 10 B.C.D. 178 (Bkrtcy.App. 9th Cir.1982); *Jensen v. Patterson (In re Patterson)*, 6 B.R. 149, 6 B.C.D. 969 (Bkrtcy.S.D.Ohio 1980); *Public Finance Corp. of America v. Walker (In re Walker)*, 7 B.R. 216 (Bkrtcy.D.R.I.1980). In Rhode Island, punitive damages may be awarded for torts involving malice, wantonness and willfulness. *Berberian et al. v. New England Telephone & Telegraph Co.*, 117 R.I. 629, 369 A.2d 1109 (1977). The conduct necessary for an award of punitive damages does not require ill will toward the plaintiff. *See Smith Devel. Corp. v. Bilow Enterprises, Inc.*, 112 R.I. 203, 308 A.2d 477 (1973). In the Court's earlier decision on dischargeability of the debt in question, Berberian's actions were characterized as "sufficiently willful and malicious to bring this case within the scope of § 17(a)(8)," 12 B.R. 465 at 469, and are the kind of conduct that should be discouraged. This is a proper case for the imposition of punitive damages. Bearing in mind that the intrusive act lasted only minutes, and that Berberian left the premises immediately upon being confronted with the restraining order, punitive damages in the amount of $1000[5] are awarded to the plaintiff in addition to the compensatory damages awarded above.

Enter Judgment accordingly.

---

4. The Court specifically rejects the contention that Joyce should be awarded damages for never completing her master's thesis, and for being unemployed since the eviction incident. Again, no connection was shown between the events in question and her inability to complete her thesis and/or her inability to become gainfully employed. In fact, the record indicates that Joyce had not worked for at least two to three years prior to the incident in question.

5. Here, again, we have not ignored the claimant's hyper-active personality, nor the likelihood that the defendant's perception of this characteristic was a motivating factor in his behavior.