Claire MONTECALVO

v.

Roger W. MANDARELLI et al.

No. 93–67–Appeal.

Supreme Court of Rhode Island.

Aug. 30, 1996.

Lauren Jones, Providence, Mark A. Sjoberg, Warwick, for Plaintiff.

Kevin McAllister, Providence, for Defendants.

## OPINION

FLANDERS, Justice.

Before some wag made the inevitable attribution to Yogi Berra, Samuel Goldwyn reportedly remarked that "[a] verbal contract isn't worth the paper it's written on."[1] A case applying this practical wisdom comes before us on the appeal of the plaintiff, Claire Montecalvo, from a judgment entered by the Superior Court in favor of the defendants, Roger W. and Joyce Mandarelli (jointly referred to as the Mandarellis), after a jury trial involving claims and counterclaims arising out of the parties' real estate ventures and an alleged oral agreement relating thereto.[2] For the reasons detailed below, we af-

1. Attributed remark, *quoted in* Alva Johnson, *The Great Goldwyn* 16 (1937).

2. The original complaint named Claire Montecalvo as plaintiff, and Roger and Joyce Mandarelli as defendants. The first amended complaint added Ralph Montecalvo, Claire Montecalvo's husband, as a party plaintiff, but he does not appeal from the Superior Court's judgment in favor of the Mandarellis.

firm the judgment of the Superior Court and deny the plaintiff's appeal.

## Travel

On January 13, 1987, plaintiff filed a complaint in Superior Court against the Mandarellis, alleging a one-half ownership interest in certain real property located at 1374–1376 Atwood Avenue (the Atwood Avenue property) in Johnston, Rhode Island. Seeking specific performance of an alleged "verbal" contract to transfer to her a one-half ownership interest in this Atwood Avenue property, plaintiff claimed that in October of 1977 defendant Roger Mandarelli (individually referred to as defendant) orally promised her such an interest after it became apparent that he could not contribute capital toward certain other real estate ventures that plaintiff and defendant were pursuing. Four years after filing her original complaint, plaintiff filed a third amended complaint, this time alleging breach of an oral partnership agreement, conversion, fraud and misrepresentation, fraudulent conveyance, and unjust enrichment.

The Mandarellis responded by denying the existence of any partnership agreement with respect to the Atwood Avenue property and counterclaimed for slander of title. They alleged that plaintiff had filed a notice of a lis pendens on the subject property, that she had done so maliciously and without legal justification, and that it caused the Mandarellis to suffer irreparable harm. Because the Superior Court partially granted the parties' respective motions for directed verdicts,[3] the only claims submitted to the jury concerned the existence of an alleged oral partnership, plaintiff's misrepresentation claims, and the Mandarellis' counterclaim for slander of title. After an eleven-day trial, the jury rejected plaintiff's partnership and misrepresentation claims and awarded the Mandarellis $50,000 on their slander-of-title counterclaim. The plaintiff then appealed to this court after the Superior Court entered judgment on the jury's verdict.

## Facts

The plaintiff, a licensed real estate broker, first met defendant, a builder and developer, in 1969. Since that time, plaintiff brokered the sale of approximately forty or fifty properties that defendant had either owned or built. Sometime during the 1970s and while acting as defendant's real estate agent, plaintiff testified that she and defendant began a partnership whereby she would acquire title to properties that defendant would later build upon or renovate.[4] Thereafter, plaintiff would sell or lease the developed properties, and the two would split the profits. According to plaintiff, at least six properties were bought, developed, and sold in this manner.

On September 21, 1976, plaintiff acted as a co-broker in the sale to the Mandarellis of the Atwood Avenue property.[5] The plaintiff received a $1,134 commission for co-brokering the sale. Subsequently, defendant allegedly proposed to plaintiff that they become partners in the property. According to plaintiff, her partnership agreement with defendant was that, in exchange for a one-half ownership interest in the property, she would lease the premises, collect the rents for him, and forego funds due her from other real estate transactions for the purpose of her having these funds be credited as her contribution toward the operating costs of the Atwood Avenue property.

In 1986 defendant allegedly repudiated this oral partnership agreement by claiming that he and his wife were the only owners of the property with no obligation to transfer any ownership interest to or share any profits therefrom with plaintiff. Although this claim was consistent with the Mandarellis' having had sole record title to the Atwood

---

3. A 1995 amendment to Rule 50 of the Superior Court Rules of Civil Procedure changed the rule's terminology from "motion for a directed verdict" to "judgment as a matter of law."

4. The plaintiff claims that since 1975, she and defendant have orally agreed to carry on as co-owners a business involving the acquiring, developing, leasing, and selling of various parcels of real estate. The real estate of this de facto partnership, plaintiff contends, includes six separate properties, one of which is the Atwood Avenue property.

5. In 1975 the Atwood Avenue property consisted of a four-unit dwelling and a small separate shack situated in front of the main dwelling.

Avenue property for the previous ten years,[6] plaintiff responded by recording a lis pendens on the property and by commencing this suit.

The defendant denied any partnership agreement with plaintiff regarding ownership of the Atwood Avenue property. He claimed that, during the early 1970s, he and plaintiff became friends while plaintiff brokered the sale of many properties on his behalf as his real estate agent. Occasionally he collaborated with plaintiff to purchase, develop, and sell selected parcels, but he always contended that each of these transactions represented separate ventures. Their relationship, defendant explained, was such that when plaintiff needed funds to pay expenses for properties that plaintiff and her husband owned jointly, defendant would advance her money without hesitation. Consequently, defendant assumed plaintiff was returning the favor when she would periodically lease the units and collect the rents for him pertaining to the Atwood Avenue property. The defendant admits he never paid plaintiff for these services. The plaintiff's actual intent in filing the lis pendens, defendant contended, was not to assert a valid property interest in Atwood Avenue but to prevent its sale and development and to pressure defendant into paying plaintiff money she claimed defendant owed her.

### Analysis

The plaintiff raises six issues on appeal. These issues will be considered in the order in which they were raised in plaintiff's principal brief. Further facts will be supplied as needed to discuss these issues.

### A. Jury Instructions on the Slander-of-Title Counterclaims

The plaintiff argues that the trial justice's instructions regarding the slander-of-title counterclaims improperly permitted the jury to find that plaintiff had slandered the Mandarellis' title to the Atwood Avenue property without requiring plaintiff to have maliciously

uttered false statements about their ownership interest in that property. In support of this argument, plaintiff cites the following passage from the trial justice's instructions to the jury:

"If there is evidence by a fair preponderance of the evidence that the Atwood Avenue property has been slandered, then Joyce Mandarelli is entitled to your verdict against Claire Montecalvo. Whether you return a verdict in favor of * * * Roger, depends. What does it depend on? It depends on what you decided about the partnership. And it simply is this: If you find that Claire failed to prove her partnership by a fair preponderance of the evidence, then in addition to giving Joyce your verdict, you must give Roger your verdict."

The plaintiff asserts that these instructions allowed the jury to find slander of title for defendant after finding slander of title for Joyce Mandarelli simply by concluding that plaintiff had failed to establish her partnership agreement with defendant. However, a review of all of the court's jury instructions belies this contention.

In evaluating the propriety of jury instructions, we view the charge "as a whole in light of the meaning and interpretation that a jury composed of ordinary, intelligent lay persons would give them." *Hueston v. Narragansett Tennis Club, Inc.*, 502 A.2d 827, 829 (R.I.1986). "An erroneous charge warrants reversal only if it can be shown that the jury 'could have been misled' to the resultant prejudice of the complaining party." *Brodeur v. Desrosiers*, 505 A.2d 418, 422 (R.I.1986) (quoting *Anter v. Ambeault*, 104 R.I. 496, 501, 245 A.2d 137, 139 (1968)).

Upon review of the record before us, and notwithstanding plaintiff's claim to the contrary, we believe the trial justice properly instructed the jury on each of the elements the Mandarellis had to prove for the jury to find for them on their respective

---

**6.** From September 1976 until March 1984 the Mandarellis owned the Atwood Avenue property as joint tenants. The property, which consists of two parcels, was later deeded temporarily to Angelo and Susie Cotia, Joyce Mandarelli's par-

ents, in 1984 and 1985 respectively. In February of 1986, the Cotias reconveyed the Atwood Avenue property to the Mandarellis, who then took title to the property as tenants by the entirety.

claims of slander of title. To recover for slander of title, the Mandarellis had to establish "that the [plaintiff] maliciously uttered false statements about [their] ownership of real estate which resulted in [their] sustaining an actual pecuniary loss." *Peckham v. Hirschfeld*, 570 A.2d 663, 666–67 (R.I.1990) (quoting *DeLeo v. Anthony A. Nunes, Inc.*, 546 A.2d 1344, 1346 (R.I.1988)). Malice in the context of a slander-of-title claim is "an intent to deceive or injure." *Hopkins v. Drowne*, 21 R.I. 20, 23, 41 A. 567, 568 (1898). It is established by showing that a party made a false statement, with full knowledge of its falsity, for the purpose of injuring the complainant(s). *Id.* at 23, 41 A. at 568; *see also Peckham*, 570 A.2d at 667.

■ Here, the trial justice's instructions specifically charged the jury on each of these elements. Specifically, the trial justice stated in pertinent part:

"What is it that *Roger Mandarelli and Joyce Mandarelli must prove* to establish a slander of title? Each one of the following four elements which make up the wrong called slander of title or slander of property, must be proved by a fair preponderance of the evidence. First, the uttering and publishing of a statement, that's the first thing. * * * Second, that the statement was false. Third, that the statement was malicious. Fourth, that the Mandarellis suffered pecuniary loss.

" * * * *

"If you are persuaded that the *Mandarellis* have proved that statement to be false, you must proceed to consider whether Mrs. Montecalvo made the statement *maliciously. You must proceed to consider the question of malice, and insofar as malice is concerned, I say to you that it consists of an intent to deceive or to injure.* So that if falsity is not proved, you will find for Claire Montecalvo. If falsity is proved, you will consider malice. *As to this element, the Mandarellis must prove by a fair preponderance of the evidence that Claire Montecalvo has claimed an interest in the Atwood Avenue property with full knowledge of the falsity of her claim and for the specific purpose of injuring the Mandarellis.* If the Mandarel-

lis failed in this proof, return a verdict for Claire Montecalvo. If they prove the statement was maliciously made, it is at that time you will consider damages." (Emphases added.)

When viewed in its entirety, therefore, the trial justice's charge to the jury on the Mandarellis' claims for slander of title was neither erroneous nor misleading.

**B. The Motion for a New Trial: Evidence of Malice**

Next, plaintiff challenges the trial justice's denial of her motion for a new trial on the basis that there is no competent evidence to support a finding that her filing of the lis pendens was malicious. We disagree.

■ When considering a motion for a new trial, the trial justice makes an independent appraisal of the evidence in light of his or her charge to the jury. *Barbato v. Epstein*, 97 R.I. 191, 193, 196 A.2d 836, 837 (1964). If the evidence is evenly balanced such that reasonable minds might differ, the jury's verdict should be sustained. *Id.* at 194, 196 A.2d at 837. If the trial justice determines that the verdict is against the fair preponderance of the evidence, a new trial should be ordered. *Id.* This court will not disturb the decision of the trial justice unless the appellant is able to show that the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong. *Donnelly v. Grey Goose Lines, Inc.*, 667 A.2d 792, 794 (R.I.1995). The plaintiff claims the trial justice was clearly wrong in concluding that reasonable minds could find that plaintiff's act of recording the lis pendens on the subject property was malicious.

■ Malice, in the context of a slander-of-title action, is a term of art. It is not necessary to show malice in its "worst sense," only that there exists an intent to deceive or injure. *DeLeo*, 546 A.2d at 1346 (quoting *Hopkins*, 21 R.I. at 23, 41 A. at 568). To establish plaintiff's intent to deceive or to injure, the Mandarellis were required to present evidence that plaintiff had made a false statement regarding their title to the property, knowing it to be false, for the specific purpose of injuring them. *Peckham*,

570 A.2d at 667. Nonetheless, "express malice need not be proved * * * [but malice] may properly be 'inferred from the language used or the character of the act committed.'" *Id.* (quoting *Hopkins,* 21 R.I. at 23, 41 A. at 568). However,

> "[t]he mere fact that a person asserts a claim to the property that is unfounded does not warrant a presumption of malice, but a plaintiff 'must also show that the defendant could not honestly have believed in the existence of the right he [or she] claimed, or at least that he [or she] had no reasonable or probable cause of believing so.'" *Id.* (quoting *Hopkins;* 21 R.I. at 25, 41 A. at 569).

The plaintiff argues that the trial justice's denial of defendant's motion for a directed verdict on her oral-partnership claim is evidence that plaintiff held a reasonable belief in her ownership interest in the Atwood Avenue property. But such an inference is unwarranted in that when the trial justice denied defendant's directed-verdict motion, he merely recognized that a question of fact existed concerning whether plaintiff honestly believed she had a valid property interest in the subject property or whether she recorded the lis pendens in bad faith, knowing full well the falsity of her claim and intending to injure the Mandarellis by doing so. If it were otherwise, in every slander-of-title claim where the claimant's motion for a judgment as a matter of law is denied, a subsequent jury verdict in the claimant's favor would be subject to a later attack arguing that the party defending the action must have had a colorable basis to file the lis pendens notice for the trial justice to have denied the claimant's motion.

▮▮▮▮ A notice of lis pendens is filed on the public record for the purpose of warning all interested persons that the title to the subject property is being disputed in litigation and that, therefore, any person who subsequently acquires an interest in the property does so subject to the risk of being bound by an adverse judgment in the pending case. Black's Law Dictionary 932 (6th ed.1990); *see also* G.L.1956 § 9–4–9. The purpose of the notice is to preserve a party's rights in the property pending the outcome of the litigation. As plaintiff has noted, the practical effect of filing a lis pendens may well be to render the property unmarketable during the pendency of the underlying dispute. If, however, a party files a notice of a lis pendens absent a good-faith belief in his or her claim to the title of the property, then he or she utters a statement knowing it is false and malice may properly be inferred. *See Hopkins,* 21 R.I. at 24–25, 41 A. at 568.

In this case, plaintiff was an experienced real estate broker with a college education. Her own attorney characterized her as "street-wise." The defendant, on the other hand, had only an eighth-grade education. The plaintiff knew that the Mandarellis had purchased the Atwood Avenue property as joint tenants and later took title as tenants by the entirety. After purchasing the property, defendant allegedly offered plaintiff a partnership interest in it. Yet for the next ten years, and notwithstanding continuous contacts with defendant, plaintiff neither reduced their alleged partnership agreement to writing nor requested defendant to do so. Moreover, plaintiff admitted that she and Joyce Mandarelli never transacted business together concerning any property.

The testimony at trial revealed considerable disagreement between the parties regarding moneys plaintiff and her husband allegedly owed the Mandarellis and moneys the Mandarellis allegedly owed plaintiff and her husband from the purchase, sale, and development of various other parcels of real estate. At one point plaintiff stated that getting money from defendant was very difficult.

In addition, circumstantial evidence suggests plaintiff anticipated the Mandarellis' pending commercial development of the Atwood Avenue property. She knew defendant had obtained a variance permitting commercial development of the site, and fourteen days after he secured a building permit, plaintiff filed a notice of lis pendens encumbering the property. The plaintiff testified that her intent in filing the lis pendens was to "stop" the Mandarellis "right where they were" so that she "could receive the funds that were due" her or to "encourage" defen-

dant "to come forward" to "get what was coming" to her.

After defendant purportedly repudiated their alleged partnership in 1986, plaintiff filed a lis pendens and commenced suit. But plaintiff never alleged an oral-partnership agreement in her original complaint, her first amended complaint, or her second amended complaint. Rather, these complaints only alleged an oral promise to convey to her an ownership interest in the Atwood Avenue property, a promise that, unless it was embodied in some writing signed by the party to be charged, would be unenforceable as within the statute of frauds (absent its qualification under some recognized exception to this defense). *See* G.L.1956 § 9–1–4(6). After the Mandarellis filed a motion for summary judgment, arguing that such an oral promise to convey an interest in land was within the statute of frauds and was, therefore, unenforceable, plaintiff filed a third amended complaint, alleging an oral-partnership agreement with defendant regarding the Atwood Avenue property. Consequently, a possible inference to be drawn from plaintiff's protean pleadings and belated assertions of an alleged oral partnership was that she was engaged in mere opportunistic sail trimming, looking for any safe harbor from the gale-force winds being blown at her "verbal contract" claim by the statute of frauds.

▮▮▮▮ After a careful review of the record, we believe sufficient evidence existed for the jury to conclude that plaintiff's act of recording the lis pendens was done maliciously. The facts and circumstances were such that the jury had reason to find that plaintiff never had a good-faith belief in her claim to a shared ownership in the Atwood Avenue property despite her conviction that the Mandarellis owed her money with respect to this and other properties. Hence, the jury could have reasonably viewed her action in filing the lis pendens as a calculated attempt to coerce defendant into paying her the money she believed past due and owing to her, rather than a legitimate endeavor to preserve her claimed ownership interest in the property. Indeed, at one point she candidly admitted that her purpose in filing the lis pendens was to "stop Roger Mandarelli and Joyce Mandarelli right where they were so that I could receive the funds that were due me." However, a lis pendens may not be used as a substitute for an attachment to collect an alleged indebtedness.

Because the Mandarellis presented sufficient evidence about which reasonable minds might differ concerning whether plaintiff's intent in recording the lis pendens was malicious, plaintiff has failed to persuade us that the decision of the trial justice to sustain the jury's verdict on this claim was clearly wrong or that he overlooked or misconceived material evidence.

### C. Alleged Evidentiary Errors

Next, plaintiff argues that the trial justice erred by refusing to allow witness Ralph Martino (Martino) to testify about admissions defendant allegedly made to him regarding the purported partnership with plaintiff in the Atwood Avenue property. After a sidebar conference on the matter, the trial justice limited the scope of Martino's testimony and excluded the controverted admissions because of plaintiff's alleged failure to disclose them in response to the Mandarellis' pretrial discovery requests.

Specifically, the Mandarellis' interrogatory No. 5 requested that plaintiff "identify each and every statement, admission, or purported admission made by [d]efendant Roger Mandarelli, either verbal or written * * * making sure [to] identify the date and substance of each such admission or statement." In answering the above interrogatory, plaintiff failed to disclose the admissions defendant allegedly made to Martino. The very next interrogatory requested plaintiff to identify each person that had witnessed defendant make the statements and admissions referred to in interrogatory No. 5. The plaintiff responded in part:

"Ralph Montecalvo, [plaintiff], J. Ronald Fishbein, Esq., and *Ralph Martino witnessed on numerous occasions the referral of problems to [plaintiff] by Roger.*" (Emphasis added.)

The plaintiff asserts that because interrogatory No. 5 pertains only to verbal and written admissions, Martino is not foreclosed from testifying about defendant's silent ad-

missions. She also contends that both Martino and the content of his testimony were sufficiently identified in her answer to the next interrogatory to permit him to testify about the purported admissions. Finally, she argues that a witness's testimony ought not be excluded "where to do so would block * * * consideration of [the] case on its underlying merits." *Lacy v. Peerless of Providence, Inc.*, 120 R.I. 278, 280, 387 A.2d 1040, 1042 (1978). She asserts that "forbidding a party to call a witness is a drastic sanction that should be imposed only if it is apparent that the violation has or will result in prejudice to the party asserting the violation." *Gormley v. Vartian*, 121 R.I. 770, 775, 403 A.2d 256, 259 (1979).

The Mandarellis argue in opposition that plaintiff waived this issue on appeal by agreeing with the trial justice's ruling on the matter. During a sidebar conference with the trial justice, counsel for plaintiff explained that the import of Martino's testimony would be to demonstrate to the jury how plaintiff and defendant interacted with each other with respect to the Atwood Avenue property and *not* to elicit from Martino admissions defendant may have made to him regarding the purported Mandarelli–Montecalvo partnership. Indeed, plaintiff's trial counsel claimed he was unaware of Martino's knowledge of the admissions until trial and specifically requested that the trial justice caution Martino *against* testifying about them. In any event, the Mandarellis assert that the trial justice properly excluded that portion of Martino's testimony pertaining to the admissions on the basis that the information had been sought in discovery but not disclosed in violation of Rule 33 of the Superior Court Rules of Civil Procedure.

It is well settled that this court will consider on appeal only those issues that have been properly raised and presented at trial. *Fiske v. MacGregor, Division of Brunswick*, 464 A.2d 719, 726 (R.I.1983). A party who fails to bring his or her objections to the attention of the trial justice waives the right to raise them on appeal. *Id.* Here, there was no attempt to offer these alleged admissions into evidence, and at sidebar plaintiff's trial counsel led the trial justice to conclude that he was not even calling Martino as a witness for the purpose of eliciting these admissions. Consequently, plaintiff failed to preserve the issue for appellate review. Yet, even if we were to assume that a proper and timely attempt to offer this evidence had been made, we still would not be persuaded by plaintiff's argument that the trial justice's decision to limit the scope of Martino's testimony constituted an abuse of discretion.

Under Rule 33(c) of the Superior Court Rules of Civil Procedure a party has a continuing duty to update and amend answers to interrogatories. Specifically, the rule states:

"If the party furnishing answers to interrogatories shall obtain subsequently information which renders such answers incomplete, amended answers shall be served not later than ten (10) days prior to the day fixed for trial."

In addition, Rule 37(d) provides:

"If a party fails to serve amended answers to interrogatories as required by Rule 33(c) *the court may enter an order prohibiting that party from introducing evidence as to any matter which ought to have been the subject of amended answers,* or the court may in its discretion pass the case on such terms and conditions as are just." (Emphasis added.) [7]

7. Rules 33(c) and 37(d) of the Superior Court Rules of Civil Procedure were amended September 5, 1995. The amendment to Rule 33(c) was intended to clarify a party's continuing duty to answer interrogatories. The prior rule required amended answers when the responding party learned that answers were "incomplete." The amendment also requires the responding party to serve amended answers when they learn that the answers are "incorrect." The rule states in pertinent part:

"If the party furnishing answers to interrogatories subsequently shall obtain information which renders such answers incomplete or incorrect, amended answers shall be served within a reasonable time thereafter but not later than 10 days prior to the day fixed for trial."

More substantial changes were made to the language of Rule 37(d), in part, to emphasize the discretionary nature of sanctions for a party's

We have concluded previously that a trial justice did not abuse his or her discretion by excluding testimony based upon a party's failure to list a witness in answers to interrogatories. *See Gormley,* 121 R.I. at 776, 403 A.2d at 259. Similarly, we have determined that a trial justice did not abuse his or her discretion by precluding a witness from testifying when a party failed to update answers to interrogatories or otherwise failed to fulfill his or her duties under the rules of discovery. *See, e.g., International Depository, Inc. v. State,* 603 A.2d 1119, 1124 (R.I. 1992). The primary purpose underlying Rule 33(c), we have said, "is to enable litigants to prepare for trial free from * * * surprise * * * so that [the] judgment[ ] can rest upon the merits of the case rather than the skill and maneuvering of counsel." *Gormley,* 121 R.I. at 775, 403 A.2d at 259.

■ Here, the trial justice closely tailored the cut of his preclusive sanction to the girth of the underlying discovery offense. Thus, plaintiff was not completely barred from calling Martino as a witness; rather, the trial justice excluded only the subject matters that had not been disclosed pursuant to specific discovery requests. In such circumstances, the trial justice's decision to limit Martino's testimony to matters other than the alleged oral and silent admissions was neither an abuse of discretion nor unduly prejudicial to plaintiff.

### D. Exclusion of the Lease

In a related matter, plaintiff claims that the trial justice erred by excluding evidence of a 1977 lease involving property located at Gage Street in Providence, Rhode Island. The plaintiff intended to use the lease to impeach defendant's testimony that he had not collected rents on the property from 1974 to 1980.

It is undisputed that, despite the Mandarellis' pretrial discovery request to plaintiff to produce for inspection and copying all documents in the possession of plaintiff relating to the Gage Street property, plaintiff failed to produce the subject lease prior to trial. Moreover, in excluding the evidence when it was offered for the first time at trial, the trial justice found the lease irrelevant for impeachment purposes, reasoning that the document simply listed Roger Mandarelli as owner of the property, a fact that was not disputed. The trial justice also noted that the document was not produced pursuant to discovery requests, that it had little bearing on the truth-finding process at trial, and that its admission into evidence at such a late point in the proceedings would be prejudicial to the Mandarellis' case.

The plaintiff, however, claims that "when a defendant introduces evidence of a new and relevant part in his [or her] defense, the plaintiff is entitled to meet and discredit such evidence in rebuttal and the denial of this right * * * [is] error." *McGonagle v. Souliere,* 113 R.I. 683, 689, 324 A.2d 667, 670 (1974).

■ We find plaintiff's argument unpersuasive. The exclusion of evidence on the grounds of relevancy is within the sound discretion of the trial justice, and this court will not disturb a trial justice's ruling on appeal absent a showing of an abuse of discretion. *State v. Neri,* 593 A.2d 953 (R.I. 1991). In this instance, the subject lease in no way contradicted defendant's denial pertaining to the collection of rents on the Gage Street property. The document is simply a 1977 lease purporting to reflect defendant as the owner of the property and another person as a tenant of the property. As such, the document has limited, if any, impeachment value with respect to defendant's denial that he collected any rents on this property, especially given the other evidence in the case that the person collecting rent on any given property may or may not have had any ownership interest therein.

Further, plaintiff's reliance on *McGonagle,* 113 R.I. at 689, 324 A.2d at 670, is of no

---

failure to comply with discovery. The amended rule provides in pertinent part:

"[i]f a party * * * fails * * * to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories, * * * the court on motion may make such orders in regard to the failure as are just."

It should be noted, however, that none of the amendments to Rules 33(c) or 37(d) alter our present analysis.

assistance here. *McGonagle* can be cited for the narrow proposition that, notwithstanding a plaintiff's failure to list a testifying witness in answers to interrogatories, highly relevant rebuttal testimony bearing directly on a key issue in a case should generally be received into evidence. However, in this case, for the reasons previously stated, the rebuttal evidence had little or no bearing on any disputed issue and its impeachment value was dubious at best. Hence, *McGonagle* is inapplicable.

### E. Conversion

The plaintiff next claims that the trial justice erred by granting defendant's motion for a directed verdict on the conversion count because (1) the trial justice improperly concluded that a partnership interest was an intangible asset not properly the subject of a conversion claim and because (2) the trial justice inappropriately made a prior demand by plaintiff and a refusal by defendant of plaintiff's share in the alleged partnership a condition precedent to bringing a cause of action for conversion.

▆▆▆▆▆ To maintain an action for conversion, plaintiff must establish that she was in possession of the personalty, or entitled to possession of the personalty, at the time of conversion. Section 222(A)(1) of the *Restatement* (Second) *Torts* defines conversion as the

"intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *See also Fuscellaro v. Industrial National Corp.*, 117 R.I. 558, 560, 368 A.2d 1227, 1230 (1977) ("the gravamen of an action for conversion lies in the defendant's taking the plaintiff's personalty without consent and exercising dominion over it inconsistent with the plaintiff's right to possession").

At common law any tangible chattel that could be lost and found could be the subject of conversion. *See generally* William L. Prosser, *The Nature of Conversion*, 42 Cornell L.Q. 168 (1957). "Land, on the other hand, was obviously incapable of getting lost, and therefore trover [or conversion] would not lie for the dispossession or withholding of real property." William L. Prosser, *Law of Torts* § 15 at 81 (4th ed.1977); *see also Naiditch v. Shaf Home Builders, Inc.*, 160 Ill.App.3d 245, 269, 111 Ill.Dec. 486, 501, 512 N.E.2d 1027, 1042 (1987) (rejecting a cause of action for conversion of real estate because such an action "is not the appropriate method of obtaining title to real property alleged to be wrongfully held pursuant to a contract provision"); *accord Carpenters Local Union No. 1266 v. Texas State Federation of Labor Building Association*, 288 S.W.2d 874, 877 (Tex.Civ.App.1956). Similarly, the tort of conversion at common law excluded intangible personal property because intangibles, like land, could not be lost or found. *Powers v. Fisher*, 279 Mich. 442, 272 N.W. 737 (1937) (no conversion of a business's good will); *Meier v. Wilkins*, 15 A.D. 97, 44 N.Y.S. 274 (1897) (no conversion of the right to occupy a market stand); *MacKay v. Benjamin Franklin Realty & Holding Co.*, 288 Pa. 207, 135 A. 613 (1927) (no conversion of an architect's ideas); Prosser, *Law of Torts* § 15 at 81.

Some courts, however, have rejected this limitation, allowing suit for the conversion of documents that represent one's ownership interest in intangible rights. *Iavazzo v. Rhode Island Hospital Trust Co.*, 51 R.I. 459, 462–63, 155 A. 407, 408 (1931) (savings-account passbook); *Devitt v. Manulik*, 176 Conn. 657, 662–63, 410 A.2d 465, 468 (1979) (savings-bank passbook); *Healey v. Flammia*, 96 Conn. 233, 237–38, 113 A. 449, 450 (1921) (promissory notes); *Mastellone v. Argo Oil Corp.*, 46 Del. 102, 111, 82 A.2d 379, 384 (1951) (stock certificates); *Humphreys v. Minnesota Clay Co.*, 94 Minn. 469, 471–72, 103 N.W. 338, 339 (1905) (upholding liability for conversion of stock); *Colton, McMichael, Lester, Auman, Visnovske, Inc. v. Mueller*, 896 S.W.2d 741, 743 (Mo.Ct.App.1995) (although conversion will not lie for appropriation of idea or debt, intangible rights identified with some document may be converted). *But see H.J., Inc. v. International Telephone and Telegraph Corp.*, 867 F.2d 1531, 1548 (8th Cir.1989) (Minnesota law does not permit conversion of intangible business relationships); *Rao v. Verde*, 635 N.Y.S.2d 660,

661 (N.Y.App.Div.1995) ("conversion of intangible property * * * is not actionable under New York law"); *B & L Corp. d.b.a. U.C. Consultants v. Thomas & Thorngren, Inc.,* 917 S.W.2d 674, 679–80 (Tenn.Ct.App.1995) (employee cannot convert employer's business relationships).[8]

■ In this case the question of whether plaintiff's claim to the Atwood Avenue property is more properly described as an interest (1) in land not subject to a claim of conversion or (2) in mere personalty consisting of plaintiff's interest in the purported partnership is of no consequence because the jury specifically found that no partnership existed; consequently, there can be no conversion of partnership property that did not belong to plaintiff. *See Kaminow v. Cooper-Kenworthy Inc.,* 79 R.I. 352, 356, 89 A.2d 165, 167 (1952). In other words, the jury's rejection of plaintiff's claim that defendant breached the alleged oral-partnership agreement and thereby wrongly refused to grant her an interest in the Atwood Avenue property moots her claim that he improperly converted this partnership property for his own benefit. Since plaintiff's multicount complaint encompassed overlapping claims, she suffered no prejudice as a result of the trial justice's decision to direct a verdict for defendant on her conversion claim.

■ Moreover, even if plaintiff had been able to prove the alleged oral-partnership agreement, we are of the opinion that a conversion action will not lie for a partnership interest or other intangible property right that is not manifested by a tangible instrument, such as a written agreement, a bankbook, or a promissory note, that may, in turn, be converted. Here, because there was no tangible document to manifest the alleged intangible partnership interest, the trial justice properly granted a directed verdict on the conversion claim.

## F. Damages

The plaintiff's final claim on appeal challenges the trial justice's denial of her motion for a new trial on the grounds that the

Mandarellis failed to prove damages. She asserts that the jury's award of damages was improperly based upon speculation rather than on evidence introduced at trial. Again, we disagree.

■ It is, of course, true that a damage award must rest upon legally competent evidence and not on speculation or conjecture. *White v. LeClerc,* 444 A.2d 847, 850 (R.I. 1982), *appeal after remand,* 468 A.2d 289 (R.I.1983). But as long as damages are based upon reasonable and probable estimates, mathematical exactitude is not required. *Id.; Rhode Island Turnpike and Bridge Authority v. Bethlehem Steel Corp.,* 119 R.I. 141, 167–68, 379 A.2d 344, 358 (1977).

In this instance the Mandarellis presented uncontradicted evidence that at the time plaintiff filed the lis pendens on the subject property in January of 1987, its market value was $300,000, and the highest and best use of the parcel included a four-unit residential structure and an office building. This opinion was based in part on the existence of a building permit issued by the town of Johnston on December 30, 1986 that allowed the Mandarellis to construct a commercial building on the property adjacent to the existing residential structure. Next, the Mandarellis' expert testified that, as of March 5, 1991, the property's market value was approximately $120,000, assuming the property's highest and best use consisted solely of the existing four-unit residential structure. According to this expert, the 1991 value of the property was based on a residential use of the parcel (rather than the mixed residential and commercial use contemplated in estimating the property's value in 1987) because of several factors: (1) the building permit issued December 30, 1986 had expired on December 30, 1988, (2) in September of 1989 a sewer moratorium went into effect, limiting the number of properties capable of tying into the municipality's sewer lines, and (3) the Johnston building inspector's office indicated to the Mandarellis' expert that a commercial building permit pertaining to the Atwood Avenue property would not be reissued.

**8.** For further information on this subject, see Annotation, *Nature of property or rights other* *than tangible chattels which may be subject of conversion,* 44 A.L.R.2d 927 (1955).

The plaintiff's expert, on the other hand, estimated the current market value of the subject property at $260,000. Yet, on cross-examination, he admitted that the actual value of the property might be even lower. Accordingly, the evidence at trial suggested a low of $40,000 and a high of $180,000 for the amount of diminution in value of the Atwood Avenue property from the time the lis pendens was recorded to the time of trial. Further testimony indicated that this minimum loss in value might be even higher than $40,000, considering that the plaintiff's expert, in estimating a current-market value for the subject property, included a 3,827–square–foot parcel of land that was neither technically part of the Atwood Avenue property nor otherwise property belonging to the Mandarellis. In view of this testimony, the jury's determination of a loss in value of $50,000 was reasonably supported by the evidence. *See Greco v. Mancini*, 476 A.2d 522, 526 (R.I.1984) (when damage to real estate is permanent, diminution-of-value standard should be employed).

### Conclusion

For the reasons stated, the plaintiff's appeal is denied and the judgment of the Superior Court is affirmed. The papers in the case may be remanded to the Superior Court.

BOURCIER, J., did not participate.